Jesus GARCIA *v.* STATE of Arkansas

CR 04-1123                                    214 S.W.3d 260

Supreme Court of Arkansas
Opinion delivered September 29, 2005

T. Clay Janske, for appellant.

Mike Beebe, Att'y Gen., by: Laura Shue, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant Jesus Garcia was convicted of first-degree murder and sentenced to life imprisonment for the July 25, 2003, beating, stabbing, and strangulation death of his wife, Gabriella Garcia.

Because Garcia does not challenge the sufficiency of the evidence, we briefly state the facts of this case. Garcia and his wife had separated about a year prior to this incident after having been married for thirty years. On the evening of July 25, 2003, Gabriella had come to Garcia's house to cut his hair. In his statement to police, Garcia said that he tried to give his wife back a pair of boots, but she became angry, saying that the boots belonged to another woman. When Garcia sat down for Gabriella to begin cutting his hair, she hit him in the back of the head with a heavy stone bowl. Garcia punched her in the chest, and the two began struggling. During the course of the altercation, Garcia alleged, Gabriella pulled a knife out of a knife block in the kitchen; he managed to wrest it away from her, and began punching and stabbing her. Garcia also grabbed another stone bowl from the kitchen counter and hit Gabriella in the head with it.

Garcia acknowledged holding Gabriella down and cutting both of her wrists; when they stopped fighting, Garcia tried to cut his own wrists in a suicide attempt. Gabriella asked him to carry her to their bed; Garcia said he thought she died while he was carrying her. After a while, Garcia passed out. He called 911 the next morning about 6:45 a.m. At that time, he was taken into custody; he was also taken to the hospital for treatment of his own wounds.

An autopsy conducted by medical examiner Dr. Frank Peretti showed that Gabriella had suffered numerous cutting

wounds to her neck and extremities, as well as lacerations to her head caused by blunt-force trauma; he also discovered that she had been strangled.

On appeal, Garcia challenges only the introduction of a number of crime scene and autopsy photographs. This court will not reverse a trial court regarding the admission of photographs absent an abuse of discretion. *Ramaker v. State*, 345 Ark. 225, 46 S.W.3d 519 (2001). When photographs are helpful to explain testimony, they are ordinarily admissible. *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271, 65 S.W.3d 389 (2001). Even the most gruesome photographs may be admissible if they assist the trier of fact by shedding light on some issue, by proving a necessary element of the case, by enabling a witness to testify more effectively, by corroborating testimony, or by enabling jurors to better understand the testimony. *Id.* Other acceptable purposes are to show the condition of the victim's body, the probable type or location of the injuries, and the position in which the body was discovered. *Jones v. State*, 340 Ark. 390, 10 S.W.3d 449 (2000). Further, a defendant cannot prevent the admission of a photograph by conceding the facts portrayed therein. *Sanders v. State*, 340 Ark. 163, 8 S.W.3d 520 (2000).

In addition, although highly deferential to the trial court's discretion in these matters, this court has rejected a carte blanche approach to admission of photographs. *Newman v. State*, 353 Ark. 258, 106 S.W.3d 438 (2003); *Berry v. State*, 290 Ark. 223, 227, 718 S.W.2d 447, 450 (1986). We have cautioned against "promoting a general rule of admissibility that essentially allows automatic acceptance of all photographs of the victim and crime scene the prosecution can offer." *Berry*, 290 Ark. at 228, 718 S.W.2d at 450. We require the trial court to first consider whether such evidence, although relevant, creates a danger of unfair prejudice, and then to determine whether the danger of unfair prejudice substantially outweighs its probative value. *Camargo v. State*, 327 Ark. 631, 940 S.W.2d 464 (1997).

In his brief, Garcia challenges the introduction of four crime scene photographs and nine autopsy photographs. He argues that the only purpose to showing the photos was "to incite emotions in the jury," because there was no question as to his guilt. He also maintains that the photos were cumulative and their probative value was outweighed by their prejudicial effect.

Prior to trial, the trial court held a brief hearing at which the prosecuting attorney and defense counsel examined the

photographs and voiced their reasons for wanting to introduce or exclude them. With each photo, the trial court listened to arguments and examined the photos; therefore, it cannot be said that this is a case of the trial court's *carte blanche* acceptance of the photos.

Taking the photos in order, Garcia first challenges State's photo Exhibit 5, which depicted Gabriella's face as the officers found her at the crime scene. On appeal, as before the trial court, Garcia argues that this photo did not depict her body as it was found, noting that State's photo Exhibit 4 showed Gabriella's body lying face down on the bed and was a more accurate depiction of her condition when police arrived at the scene. Garcia also asserts that Exhibit 5 was cumulative and irrelevant. While Exhibit 5 did not show Gabriella as she was when the officers arrived, it did show the extent of the injuries to her head and face before her body was cleaned. In addition, the State's exhibit significantly showed that Gabriella's face was so bloody that no one had initially noticed that she had also been strangled until later, when the autopsy was performed. This court has said that the nature and extent of a victim's wounds are relevant to a showing of intent. *Halford v. State*, 342 Ark. 80, 27 S.W.3d 346 (2000). The trial court's decision to admit Exhibit 5 into evidence was not an abuse of discretion.

Garcia next takes issue with State's Exhibits 16, 18, and 27. These three photos depict, respectively, a blood-spattered kitchen floor with an oven dial resting on the floor; a pair of blood-spattered sneakers; and a wooden knife block resting on the floor under a kitchen table, with a heavily blood-stained kitchen floor in the foreground. Garcia argues that these photos are cumulative and address neither any specific piece of evidence nor any element of the crime. However, the photo of the oven knob depicted the extent of the struggle in the kitchen; that is, Garcia and his wife fought so hard that they knocked the knob onto the floor. The photo of the blood-stained shoes was used to show that the blood had dried on them, which corroborated Garcia's rendition of events wherein he stated that he waited until the next morning to call the police. And the photo of the knife block was relevant because it showed the knife block from which Garcia alleged that Gabriella had pulled the knife. Each photo was

relevant to a fact in issue, and therefore, the trial court, again, did not abuse its discretion in admitting them.

Garcia next challenges nine autopsy photographs, which were introduced as State's Exhibits 29 through 37. Each of these photos was introduced by the State for the following reasons: (1) State's Exhibit 29 shows the ligature abrasion around Gabriella's neck, as well as the multiple cutting wounds on her neck and abrasions on her chin, neck, and chest. (2) Exhibit 30 shows two large lacerations on the back of the victim's head; these were the wounds inflicted with the stone bowl. (3) Exhibit 31 depicts the petechial hemorrhaging present in Gabriella's eyes and eyelids, which indicated that she had been strangled. (4) Exhibit 32, a photo of Gabriella's face, shows additional petechial hemorrhaging, as well as extensive bruising around her eyes, nose, and mouth, and showed that her nose had been broken. (5) Exhibit 33 depicts a large cutting wound on the victim's left arm; (6) Exhibit 34 shows a deep cut to the back of her left hand and other cuts on her wrist and arm. (7) Exhibit 35 features two cutting wounds on her right arm. (8) Exhibit 36 portrays a cutting wound to the back of Gabriella's right hand, and (9) Exhibit 37 shows a deep cutting wound to the palm of her right hand and two other cuts on the inside of her arm.

Dr. Peretti, the medical examiner, referred to each of these nine photos as he testified. At least two of the photos — the one showing the ligature marks and the one depicting the petechial hemorrhaging in her eyes — were used to enhance and clarify Dr. Peretti's testimony that Gabriella had been strangled in addition to being stabbed and hit in the head. Further, the photo of the back of her head showing where she had been struck with a blunt object was also used to show the location and extent of her injuries, and helped Dr. Peretti testify more effectively about his examination of her remains and his conclusions regarding the cause of death. The photos of the cutting wounds on Gabriella's arms and hands corroborated Dr. Peretti's testimony that she had defensive wounds to her extremities.

In sum, all of the photos showed the nature, extent, and location of the victim's wounds, and were relevant to showing Garcia's intent. As the State points out, Garcia was charged with purposefully causing the death of his wife; at trial, he attempted to challenge the *mens rea* element of the offense by claiming that he did not intend to murder his wife. The photos were properly admitted and relevant to showing the intent element of the crime.

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for adverse rulings objected to by Garcia but not argued on appeal, and no prejudicial error is found.