2009 Ark. 478

Adam DAVIS, Jr., Appellant,

v.

STATE of Arkansas, Appellee.

No. CR 09–339.

Supreme Court of Arkansas.

Oct. 8, 2009.

James Law Firm, by: William O. "Bill" James, Jr., and Cheryl Barnard, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Karen Virginia Wallace, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice.

Appellant Adam Davis, Jr., appeals the judgment of the Garland County Circuit Court convicting him of the capital murder of his wife Marilyn Davis and the attempted first-degree murder of her friend Velma Davis. As Appellant was sentenced respectively to consecutive terms of life imprisonment without parole and thirty years plus two firearm enhancements of fifteen years each, our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(a)(2). Appellant asserts five points for reversal. We affirm the judgment of conviction entered pursuant to a jury verdict.

Appellant testified at trial that on June 16, 2007, he was driving his truck on Malvern Avenue in Hot Springs when he saw his wife's car and plowed right into the back of it. He testified that he then exited his truck and shot his wife, Marilyn Davis. He stated he also shot her friend, Velma Davis, who was driving another vehicle in front of his wife's. Marilyn Davis died as a result of this shooting. Velma Davis survived but suffered injuries. Both Appellant and Appellee state in their briefs to this court that Appellant's intent or state of mind was the central or main issue litigated at trial.

I. *Sufficiency of Evidence*

Appellant's first point for reversal is that there was insufficient evidence from which the jury could have convicted him of capital murder and attempted first-degree murder. Specifically, Appellant contends that the State failed to prove that he acted with the requisite mental state for each offense.

The State initially responds that Appellant failed to preserve this argument for

our review because his motion for directed verdict was untimely. Specifically, the State contends that rather than renewing his motion at the close of all the evidence, Appellant instead renewed his motion at the close of all testimony but prior to the introduction of several documents and the resting of his case. The State contends this does not meet strict compliance with Rule 33.1 of the Arkansas Rules of Criminal Procedure. In the alternative, the State contends there was sufficient evidence that Appellant acted with the requisite mental state for each offense.

Our review of the record before us reveals the following. At the close of the State's case, Appellant moved for a directed verdict on the charges of capital murder and attempted first-degree murder, arguing with detail and at length that there was insufficient evidence that Appellant possessed the mental state required for each charge. The circuit court denied the motions as to both charges. Appellant then presented several witnesses, including himself. Following Appellant's testimony, Appellant's counsel requested a bench conference to discuss the admission of four documents. The circuit court then recessed, with counsel for both sides going into chambers to discuss the documents. The State did not object, and the circuit court stated they would be received into evidence. These documents consisted of a protection order and three complaints for divorce that had been dismissed. Appellant then renewed his motions for directed verdict on both charges. The circuit court denied both motions. The court and counsel for both sides then immediately proceeded to discuss jury instructions. When the proceedings resumed in open court, Appellant introduced each of the four documents individually into evidence in the presence of the jury. With respect to each document, the circuit court stated that it would be admitted and received into evidence as defendant's exhibits 1 through 4

respectively. Appellant's counsel published the four exhibits to the jury and stated, "[W]e respectfully rest." Appellant never renewed his motions for directed verdict after the documents were introduced into evidence, nor did he renew his motions after resting his case. The State announced it had no rebuttal, and the circuit court then announced the evidentiary case was closed and proceeded to instruct the jury.

■ To preserve a sufficiency-of-the-evidence challenge on appeal, a timely, clear, and specific motion for directed verdict must be made to the trial court. Ark. R.Crim. P. 33.1(c); see *Foster v. State*, 2009 Ark. 454, 2009 WL 3162291. Rule 33.1 sets out the procedure for making the motion and states in pertinent part:

(a) In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor.

. . . .

(c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense. A renewal at the close of all of the evidence of a previous motion for directed verdict or for dismissal preserves the issue of insufficient evidence

for appeal. If for any reason a motion or a renewed motion at the close of all of the evidence for directed verdict or for dismissal is not ruled upon, it is deemed denied for purposes of obtaining appellate review on the question of the sufficiency of the evidence.

■ This court interprets Rule 33.1 strictly. *Grady v. State,* 350 Ark. 160, 85 S.W.3d 531 (2002). We have said that the reasoning behind the specificity requirement in Rule 33.1 is that when the specific grounds are stated to the trial court, it can either grant the motion, or, if justice requires, allow the State to reopen its case and supply the missing proof. *See Foster,* 2009 Ark. 454. With respect to the timeliness requirement, this court has said in *Cummings v. State,* 315 Ark. 541, 546, 869 S.W.2d 17, 20 (1994):

> The reason for the rule is obvious. As we stated in *Rudd v. State,* 308 Ark. 401, 405, 825 S.W.2d 565, 567 (1992):
>
>> [A] motion for a directed verdict at the close of the plaintiff's case has as its purpose a procedure for determining whether the plaintiff has met the burden of establishing a prima facie case, with that question to be resolved by the court as a matter of law. In the event the motion is overruled, the defendant may elect to stand on the motion or to go forward with the production of additional evidence, in which case he has waived any further reliance upon the former motion.
>
> A motion for a directed verdict at the close of the entire case is rendered necessary, of course, by virtue of the automatic waiver that occurs when the defendant proceeds to mount a case.

This court has had occasion to rule that a renewal of a motion for directed verdict made after the jury has been charged or instructed is not timely. *Robinson v. State,* 348 Ark. 280, 72 S.W.3d 827 (2002); *Claiborne v. State,* 319 Ark. 602, 892 S.W.2d 511 (1995). This court has also had occasion to rule that a renewal of a motion for directed verdict made at the conclusion of the defendant's case-in-chief followed by a failure to renew after the State presents rebuttal evidence operates as a waiver. *Christian v. State,* 318 Ark. 813, 889 S.W.2d 717 (1994). However, we have not previously had before us a case such as the present one where a defendant failed to renew his motion after reopening his own case to admit additional documents into evidence.

■ We conclude that the reasoning we applied in *Christian* is likewise applicable here. The plain language of Rule 33.1 requires that the motion be renewed at the close of *all* the evidence. The failure to do so operates as a waiver of any question relating to the sufficiency of the evidence to support the jury's verdict. *Cummings,* 315 Ark. 541, 869 S.W.2d 17. We interpret Rule 33.1 strictly. *Grady,* 350 Ark. 160, 85 S.W.3d 531; *Christian,* 318 Ark. 813, 889 S.W.2d 717. Appellant's failure to renew his motion for directed verdict at the close of all the evidence, after he reopened his case to admit four documents into evidence, therefore operates as a waiver of his challenge to the sufficiency of the evidence to support the jury's verdict.

## II. *Manslaughter with Extreme Emotional Disturbance*

As his second point for reversal, Appellant contends that the trial court's refusal to give the proffered instruction for manslaughter with extreme emotional disturbance denied Appellant his constitutional right to present a complete defense. Appellant acknowledges that this court has taken the view that the provocation that incites the extreme emotional disturbance necessary for manslaughter is restricted to an event such as a physical fight, threat, or brandished weapon, occurring in the mo-

ment prior to the victim's death. *Jackson v. State*, 375 Ark. 321, 290 S.W.3d 574 (2009). However, Appellant urges this court to extend the time frame of the provocation eliciting the extreme emotional disturbance to include a history of ill treatment leading up to the final provocation. Appellant acknowledges that the trial court allowed him to present evidence of the history of discord in his marriage, but contends the refusal to have the jury instructed on manslaughter with extreme emotional disturbance denied him his constitutional right to present a complete defense.

The State first responds that this argument is not preserved for our review because Appellant has changed his argument on appeal from what he argued below. Alternatively, the State responds that there was no evidence to support the giving of the requested instruction because there was no evidence of provocation in the form of a physical fight, a threat, or a brandished weapon. *See, e.g., id.*

At trial, Appellant proffered AMI Crim.2d 1004 and argued as follows:

> What they've [Arkansas Supreme Court] restricted it to is it has to be immediate after one (1) threat or one (1) emotional disturbance. It's not a continuation. They don't take into account that human beings in life, in real life sometimes are not subjected to one (1) incident, they're subjected to multiple incidents, and that's what leads 'em up to it. And we feel that based on that we should be able to submit, and our law is incorrect in light of *Holmes versus South Carolina* [547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006)] . . . . I'm not trying to be disrespectful to the Justices, but we feel that it should be expanded to include something beyond an isolated incident or a single incident.

The trial court denied the proffered instruction on manslaughter with extreme emotional disturbance.

We agree with the State that Appellant is now arguing for the first time on appeal that the trial court's admission of the testimony of his wife's pattern of abusive or upsetting behavior toward him followed by the refusal to give the instruction on manslaughter with extreme emotional disturbance, deprived him of his constitutional right to have a meaningful opportunity to present a complete defense under *Gilmore v. Taylor*, 508 U.S. 333, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993). Despite Appellant's contention to the contrary, his argument below was completely silent with respect to the constitutional right to present a complete defense. Appellant did not raise this particular argument below, and it is therefore not preserved for our review. *Davis v. State*, 368 Ark. 401, 246 S.W.3d 862 (2007). Our law is well settled that issues raised for the first time on appeal, even constitutional ones, will not be considered on appeal. *London v. State*, 354 Ark. 313, 125 S.W.3d 813 (2003); *Ferrell v. State*, 325 Ark. 455, 929 S.W.2d 697 (1996) (even in a case in which a sentence of life without parole has been imposed, the appellant is bound by the scope of the argument he made at the trial level).

III. *Failure to Instruct on Lack of Parole Eligibility for Firearm Enhancement was Due Process Violation*

Appellant's third point for reversal centers on the trial court's failure to instruct the jury on the lack of parole eligibility on the firearm enhancements to his sentences. We are precluded from reaching the merits of this argument because Appellant did not proffer an instruction to the circuit court. In order to preserve for appellate review any objection to

the trial court's failure to give an instruction, it is Appellant's burden to proffer the instruction to the trial court and then to include the proffered instruction in the record and abstract. *Robertson v. State,* 2009 Ark. 430, 347 S.W.3d 460; *Wallace v. State,* 326 Ark. 376, 931 S.W.2d 113 (1996). While there was indeed some discussion below concerning the eligibility of parole or lack thereof when multiple firearm enhancements are involved, despite Appellant's contention to the contrary, there was never any instruction on the subject proffered to the circuit court. We simply will not consider any argument on appeal that the circuit court erred in failing to give an instruction when that instruction was never proffered to it. *Davis,* 368 Ark. 401, 246 S.W.3d 862.

### IV. *Arkansas Rule of Evidence 404(b)*

As his fourth point for reversal, Appellant contends the trial court abused its discretion in admitting the testimony of Iris Jean Foxworth and Letricia Johnson over his objection based on Rule 404(b) of the Arkansas Rules of Evidence. Appellant argues that this testimony was not independently relevant but that even if it did have probative value, such value was substantially outweighed by its prejudicial effect.

Appellant summarizes Ms. Foxworth's testimony as follows. Ms. Foxworth testified that while she was waiting in Marilyn Davis's beauty shop on the day before the homicides, she saw Marilyn Davis pull into a parking place. She then saw Appellant pull in behind Marilyn Davis's car, get out of his vehicle, open Ms. Davis's door, and grab some papers. She heard Appellant tell Ms. Davis, "You have until 4 o'clock this evenin', I'll be back at 4 o'clock this evenin'." Ms. Foxworth also testified that she heard both parties yelling at each other. Appellant contends that this testimony fails to have independent relevance and that it has prejudicial effect because it

paints a picture of Appellant as being violent, aggressive, and a person of bad character. It was therefore an abuse of discretion, argues Appellant, for the trial court to admit Ms. Foxworth's testimony.

Ms. Johnson testified that she was a nail technician at Marilyn Davis's salon. She stated that the police were at the salon when she arrived there on the day before the shootings. She stated that although she did not read it, she saw a protection order that Marilyn Davis had obtained against Appellant. She also testified that on the day of the shootings, both victims were at the salon and that she saw Appellant drive by the salon in a Ford truck peering through the windows. She stated that she left the shop approximately ten minutes before the two victims left. She also testified that the salon was on the corner of Grand and Crescent, about three blocks from Malvern Avenue where the shootings occurred. Appellant contends this testimony fails to have independent relevance and has a cumulative prejudicial effect relating to his character and personal habits.

Generally, rulings on the admissibility of evidence are matters within a trial court's discretion, and we do not disturb those rulings on appeal absent a showing of abuse of that discretion and prejudice. *Grant v. State,* 357 Ark. 91, 161 S.W.3d 785 (2004). Abuse of discretion is a high threshold that does not simply require error in the trial court's decision, but that the trial court act improvidently, thoughtlessly, or without due consideration. *Id.*

The trial court held a pretrial hearing to consider Rule 404(b) evidence in this case. The State sought admission of testimony from four witnesses as well as the protection order obtained by Marilyn Davis on the day before she was shot and killed. The trial court excluded the testimony of

two of those witnesses but ruled admissible the protection order and, subject to any hearsay objections, the testimony of the remaining two witnesses that Appellant now challenges on appeal, Ms. Foxworth and Ms. Johnson.

Both Appellant and Appellee state in their briefs that Appellant's intent or state of mind was the central issue or main issue litigated at trial. We agree with the State that the testimony of both witnesses challenged on appeal is independently relevant on the issue of Appellant's intent. A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Watson v. State*, 358 Ark. 212, 188 S.W.3d 921 (2004). Because intent is not easily proven by direct evidence, jurors are allowed to draw upon their common knowledge and experience to infer it from the circumstances. *Id.* In addition, because of the obvious difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Id.* From the testimony of Ms. Foxworth and Ms. Johnson, a jury could have concluded that Appellant's actions on the day before the shootings and the on day of the shootings showed he acted in a purposeful and deliberate manner. In addition, both witnesses' testimony show motive, opportunity, preparation, plan, knowledge, and absence of mistake or accident. The trial court carefully considered the admissibility of both witnesses' testimony at the pretrial hearing. Accordingly, we see no abuse of discretion.

### V. *Autopsy Photographs*

As his fifth point for reversal, Appellant contends the trial court erred in admitting six autopsy photographs. He argues the trial court failed to consider any objections raised by Appellant and admitted carte blanche every autopsy photograph offered by the State. In addition, Appellant contends there is no indication in the record that the trial court ever viewed the photographs or offered any explanation for overruling Appellant's objections. Appellant also argues that allowing the photographs to be shown in color rather than black and white unnecessarily and unfairly prejudiced the jury.

A court's admission of even a gruesome photograph is not an abuse of discretion if the photograph sheds light on some issue, proves a necessary element of the case, enables a witness to testify more effectively, corroborates testimony, or enables jurors to better understand testimony. *Garcia v. State*, 363 Ark. 319, 214 S.W.3d 260 (2005). Further considerations in admitting photographs include whether the photograph shows the condition of the victim's body, the probable type or location of the injuries, and the position in which the body was discovered. *Id.* A circuit court, however, must not apply a carte blanche approach to admission of a photograph and must consider whether the photograph creates a danger of unfair prejudice that substantially outweighs its probative value. *Id.*

We note that, despite Appellant's contentions to the contrary, the record does indicate the trial court viewed the photographs and considered his objections to them. Appellant's abstract of the record accurately and plainly states that the circuit court stated with respect to the photographs, "Okay, let's see 'em." The record and abstract plainly indicate "COURT REVIEWS PHOTOGRAPHS." Appellant then objected to the photographs as prejudicial and grotesque, arguing that they would be less prejudicial if they were in black and white. The circuit court then responded, "Okay. I'm gonna allow the State to use 'em. I'm gonna overrule your

objections." We therefore find no merit to Appellant's claim that the trial court admitted these photographs carte blanche without viewing them or considering his objections to them.

█ The photographs at issue here were introduced during the testimony of the medical examiner, Dr. Konzelman, to demonstrate the nature of the injuries and the manner and order in which they were inflicted. Dr. Konzelman explained that State's exhibit 40 pictured Marilyn Davis's body as it looked just before he conducted the autopsy. He testified that State's exhibits 41–46 demonstrated that the location of Marilyn Davis's injuries showed they were inflicted at close range by two different weapons. According to Dr. Konzelman, State's exhibits 41 and 42 showed that the two wounds from the shotgun indicated the shotgun was fired from a range of eight feet or closer. Dr. Konzelman explained that at least one of the two wounds to the head indicated that the muzzle of the gun was placed against the victim's skin at the time of discharge. The photographs therefore bore direct relevance to the key issue in this case, Appellant's intent or state of mind. Therefore, the trial court did not abuse its discretion in admitting them into evidence.

█ As for Appellant's contention that the photographs would have been less prejudicial if shown in black and white rather than color, the State responds that this objection was untimely. The State contends it was a practical impossibility to produce black and white photographs when Appellant did not object on this basis until immediately prior to their admission into evidence. We agree.

### VI. Failure to Instruct on Lesser–Included Offense of Second–Degree Murder

As his final point for reversal, Appellant contends the trial court erred in refusing to instruct the jury that second-degree murder was a lesser-included offense of capital murder. Appellant proffered AMI Crim.2d 1003, the instruction for second-degree murder, to the circuit court and argued it should be given as a lesser-included offense of capital murder. The State objected, contending there was no rational basis for giving the requested instruction on second-degree murder. Appellant then argued that the evidence that he inflicted four gunshot wounds with two weapons demonstrated that he acted with extreme indifference to the value of human life. The circuit court ruled that he would allow an instruction on the lesser-included offense of first-degree murder, but denied the request to instruct on second-degree murder.

█ While it is reversible error to refuse to give an instruction on a lesser-included offense when the instruction is supported by even the slightest evidence, it is not error for the court to refuse or fail to instruct on the lesser offense where the evidence clearly shows that the defendant is either guilty of the greater offense charged or innocent. *Fudge v. State,* 341 Ark. 759, 20 S.W.3d 315 (2000). In addition, we adhere to our well-established "skip rule," which provides that when an instruction on a lesser-included offense has been given, and the jury convicts of the greater offense, error resulting from the failure to give an instruction on another still lesser-included offense is cured. *Yankaway v. State,* 366 Ark. 18, 233 S.W.3d 136 (2006).

█ Appellant asserts that the circuit court erred when it rejected the instruction on second-degree murder and instead gave the instruction on capital murder and the lesser-included offense of first-degree murder. We disagree with Appellant's argument. Here, the jury was instructed on capital murder and first-degree murder.

The jury found appellant guilty of capital murder, the greater offense. The skip rule is applicable and, as such, any error that might have resulted from the trial court's failure to instruct the jury was cured. *Vidos v. State*, 367 Ark. 296, 239 S.W.3d 467 (2006); *Yankaway*, 366 Ark. 18, 233 S.W.3d 136. The skip rule thus bars Appellant's argument that the circuit court abused its discretion in failing to give a second-degree murder instruction.

In his reply brief, Appellant contends that our skip rule should not apply here because there is an overlap between capital murder and first-degree murder such that the jury may well have chosen to convict him of second-degree murder if they had been given that opportunity. We reject this argument because we have held repeatedly that capital murder and first-degree murder are distinct crimes. *Lever v. State*, 333 Ark. 377, 971 S.W.2d 762 (1998); *Landreth v. State*, 331 Ark. 12, 960 S.W.2d 434 (1998). Appellant continues with the claim that to apply the skip rule effectively disallows instructions on lesser-included offenses. Appellant presents no valid legal basis to support this argument. We therefore do not consider it on appeal. This court does not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *Hollis v. State*, 346 Ark. 175, 55 S.W.3d 756 (2001).

### VII. *Arkansas Supreme Court Rule 4–3(i)*

We recognize that Appellant received a sentence of life without parole. In such cases, we are required by our own Supreme Court Rules to review all adverse rulings to Appellant made on motions, objections, and other requests. Ark. Sup.Ct. R. 4–3(i). Rule 4–3(i), however, does not require this court to review an argument not specifically made to the circuit court or to research a novel argument for an appellant who cites no apposite authority. *Hollis*, 346 Ark. 175, 55 S.W.3d 756. Both counsel for Appellant and the State have certified that the objections have all been abstracted. We have found no other rulings adverse to Appellant that constituted prejudicial error.

For the aforementioned reasons, the judgment of conviction is affirmed.

BROWN, J., not participating.