SLIP OPINION

Cite as 2017 Ark. 287

# SUPREME COURT OF ARKANSAS

No. CR–16–1135

| | |
|---|---|
| LARON EDWARD WILLIAMS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** October 26, 2017<br><br>APPEAL FROM THE CLARK COUNTY CIRCUIT COURT [NO. 10CR-15-20]<br><br>HONORABLE ROBERT MCCALLUM, JUDGE<br><br><br>AFFIRMED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Laron Williams and two accomplices, Craig Wade and James Gray, Jr., were charged with aggravated robbery and capital murder. Appellant was tried individually by a Clark County jury, found guilty on both counts, and sentenced to a total term of life imprisonment without the possibility of parole.[1] For reversal, appellant contends that the circuit court (1) erred in denying his motions for directed verdict and (2) abused its discretion by admitting into evidence gruesome and inflammatory photographs of the victim's body. We affirm.

This case arises from the aggravated robbery and capital murder of Christopher Brown at a Caddo Valley Shell gas station and convenience store. Brown was the clerk on

---

[1] Appellant was sentenced to life imprisonment without the possibility of parole for capital murder. For his aggravated-robbery conviction, he received a forty-year sentence, with a consecutive fifteen-year firearm enhancement. The forty-year sentence and the firearm enhancement were to run concurrently to the life sentence.

SLIP OPINION

duty at the time. The criminal episode was captured on time-stamped surveillance videos, which were played for the jury.

On the morning of January 24, 2015, Craig Wade and James Gray, Jr., picked up appellant at his home in Pine Bluff. At approximately 2:00 p.m., the three left Pine Bluff and drove in Gray's car to the casino at the Oaklawn racetrack in Hot Springs. They gambled, drank alcohol, and used drugs for several hours before starting back to Pine Bluff during the early morning hours of January 25. While driving home, they realized that the car was low on fuel and that none of them had any money.

Videos show Gray's car, a silver Ford, pulling up to the store for the first time at approximately 4:25 a.m. Appellant and Wade exited the vehicle and went inside the store. After buying a package of gum, the two returned to the car and drove away from the station at 04:30:50.

At 04:38:11, the silver Ford returned to the Shell station and parked near the back entrance of the store. No one exited the vehicle for more than four minutes. Appellant testified that, during this time, they were planning how they would steal a thirty-pack of beer so that they could sell it for gas money. Appellant further testified that he attempted to conceal his identity by wrapping a jacket around his waist to cover his pants pockets and pulling a wave cap down over his face.

Videos show that at 04:42:52, appellant and Wade simultaneously exited the vehicle. They entered the store together at 04:42:56. Wade ran toward the counter, and at 04:43, he shot Brown in the forehead. Brown fell to the floor behind the counter. Wade appeared to be frantic, running inside the store and then outside to the car, falling twice as he fled.

Meanwhile, appellant ran behind the counter, covered his hands with the t-shirt he was wearing, and attempted to open the cash register. Unable to open the register, appellant stepped over Brown's body and appeared to be looking for something to steal behind the counter. He then leaned over and searched Brown's pockets. Videos show that appellant stayed in the store about fifteen seconds longer than Wade. When appellant exited the store, he left a trail of bloody footprints from behind the counter into the car, which Gray had positioned to facilitate a quick getaway.

Appellant denied that, during their first trip to the store, he, Wade, and Gray were "casing it" for a possible robbery. Appellant maintained he did not know that Wade had a gun and that he was "shocked" when Wade shot the victim. Appellant acknowledged that after the shot had been fired, he could be seen on the video attempting to open the cash register, stepping over the victim's body, and looking around behind the counter. Appellant claimed, however, that he merely pretended to proceed with the crime because he feared that Wade would shoot him.

## I. *Sufficiency of the Evidence*

Appellant contends that the State failed to prove that he was guilty of the underlying felony of aggravated robbery to support a conviction for capital murder. He concedes that his intent to commit theft was established by his admission that he went into the store to steal beer. But he contends that there is insufficient evidence to establish that he was an accomplice to the crimes because there is no proof that he knew of Wade's plan to use deadly force on the victim.

SLIP OPINION

On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *E.g.*, *Starling v. State*, 2016 Ark. 20, 480 S.W.3d 158. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *E.g.*, *Wells v. State*, 2013 Ark. 389, 430 S.W.3d 65. Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or the other and pass beyond mere suspicion or conjecture. *E.g.*, *Ross v. State*, 346 Ark. 225, 57 S.W.3d 152 (2001). The evidence is viewed in the light most favorable to the State, and only evidence supporting the verdict will be considered. *E.g.*, *Starling*, 2016 Ark. 20, 480 S.W.3d 158.

In this case, appellant was convicted of aggravated robbery and capital murder. In relevant part, a person commits aggravated robbery if, with the purpose of committing a felony or misdemeanor theft,[2] he employs or threatens to employ physical force upon another person, and he "[i]s armed with a deadly weapon" or "[i]nflicts or attempts to inflict death or serious physical injury upon another person." Ark. Code Ann. § 5-12-103 (Repl. 2013); *see also* Ark. Code Ann. § 5-12-102. To convict appellant of capital murder in this case, the State had to prove that appellant, acting alone or with one or more other persons, committed or attempted to commit aggravated robbery and in the course of and in furtherance of that crime or in the immediate flight therefrom, appellant or an accomplice caused the death of the victim under circumstances manifesting an extreme indifference to the value of human life. Ark. Code Ann. § 5-10-101(a)(1)(A)(vi), (B).

---

[2] The theft alleged in this case is that the defendant knowingly took the property of another person. Ark. Code Ann. § 5-36-103(a)(1).

The State alleged that appellant acted as an accomplice to the crimes. "A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of the offense, the person . . . [s]olicits, advises, encourages, or coerces the other person to commit the offense" or "[a]ids, agrees to aid, or attempts to aid the other person in planning or committing the offense." Ark. Code Ann. § 5-2-403(a)(1)–(2). When two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of all. *See, e.g.*, *Purifoy v. State*, 307 Ark. 482, 822 S.W.2d 374 (1991); *see also Jefferson v. State*, 359 Ark. 454, 198 S.W.3d 527 (2004) (explaining that, under the accomplice-liability statute, a defendant may be found guilty not only of his own conduct, but also the conduct of his accomplice). A participant cannot disclaim responsibility because he or she did not personally take part in every act that went to make up the crime. *See Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). Relevant factors in determining the connection of an alleged accomplice to a crime include the presence of the accused in proximity of a crime, the opportunity to commit the crime, and an association with a person involved in the crime in a manner suggestive of joint participation. *See Britt v. State*, 334 Ark. 142, 974 S.W.2d 436 (1998). Finally, we have held that concert of action to commit an unlawful act may be shown by circumstantial evidence, without direct proof of a conspiracy agreement. *Purifoy*, 307 Ark. 482, 822 S.W.2d 374.

We first consider appellant's contention that there is insufficient evidence to establish that he acted as an accomplice. A review of the testimony and evidence presented at trial reveals that, at the time of the crimes, appellant, Wade, and Gray had been together for

many hours. They needed money to purchase gas so they could drive back to Pine Bluff. The three men made two trips to the Shell station. First, appellant and Wade went inside the store and bought a package of gum while Gray waited in the car. The three men left, and then, minutes later, they returned to the Shell station together. Appellant admitted that they sat in the car planning the theft for several minutes before going inside the store. Surveillance videos show that appellant and Wade rushed into the store together; that Wade shot the victim; and that appellant attempted to open the cash register, appeared to look around for something to steal, stepped over the victim's body, and searched the victim's pockets. Having viewed the evidence in the light most favorable to the State, we conclude that it was reasonable for the jury to infer from the circumstances that appellant acted as an accomplice to the crimes.

Moreover, the jury was not obligated to believe appellant's testimony that he did not know that Wade had a gun, that he was "shocked" when Wade shot the victim, and that he proceeded with the robbery for fear that Wade would shoot him. It was within the jury's province to assess witness credibility and decide whether to believe the State's or the defendant's version of events. *See, e.g.*, *Smoak v. State*, 2011 Ark. 529, 385 S.W.3d 257. In this case, it is evident that the jury did not give credence to appellant's story.

Finally, appellant appears to suggest that his conviction for capital murder cannot stand because the State failed to prove that he acted with the intent of causing the victim's death. A capital-felony-murder conviction requires proof that "a death [was] caused in the course of committing a felony such as rape, kidnapping, or robbery." *Jones v. State*, 336 Ark. 191, 204, 984 S.W.2d 432, 438 (1999). The State need only prove that the defendant,

whether he acted alone or as an accomplice, had the requisite intent to commit the underlying felony, not the murder. *See Britt*, 334 Ark. 142, 974 S.W.2d 436. Because there was sufficient evidence from which the jury could conclude that appellant was an accomplice to the crimes, we hold that the circuit court did not err in denying appellant's motions for directed verdict.

## II. *Admission of Photographs*

Appellant contends that the circuit court abused its discretion by admitting into evidence gruesome and inflammatory photographs of the victim's body. He further contends that the photographs were inadmissible because they were cumulative to the crime-scene videos that were played for the jury. Appellant objected to the photographs admitted as State's exhibits 14, 15, 16, and 18. The State argued that exhibit 14 was admissible to show the position of the victim's body behind the counter when the officers arrived at the crime scene; that exhibit 15 was admissible to show the gunshot wound to the victim's forehead; that exhibit 16 was admissible to show the proximity of a bloody footprint to the victim's body; and that exhibit 18 was admissible to show where appellant had stepped in the pool of blood surrounding the victim's head. The circuit court agreed with the State and overruled appellant's objection. The circuit court rejected appellant's argument that the photographs were cumulative, noting that the images depicted in the photographs were not clearly visible from the videos. Finally, the circuit court ruled that the probative value of the photographs outweighed any potential prejudice. At trial, the photographs were introduced through the testimony of the criminal investigator who took pictures at the crime scene, Special Agent Neal Thomas of the Arkansas State Police.

SLIP OPINION

The admission of photographs is a matter left to the sound discretion of the circuit court, and we will not reverse absent an abuse of that discretion. *E.g.*, *Anderson v. State*, 2011 Ark. 461, 385 S.W.3d 214. Generally, a photograph is admissible if it serves a valid purpose and if the probative value of the photograph is not outweighed by its prejudicial effect. *See Weger v. State*, 315 Ark. 555, 869 S.W.2d 688 (1994). For example, "photographs [that] are inflammatory in the sense that they show human gore repulsive to the jurors" may be admissible if they shed light on any issue, assist witnesses in describing a crime scene, or help the jury understand the testimony. *See, e.g.*, *Ramaker v. State*, 345 Ark. 225, 235, 46 S.W.3d 519, 526 (2001); *Harvey v. State*, 292 Ark. 267, 277, 729 S.W.2d 406, 409 (1987). In addition, photographs may be admissible to show the condition of the victim's body, the probable type or location of the injuries, and the position in which the body was discovered. *See Evans v. State*, 2015 Ark. 240, 464 S.W.3d 916.

In this case, the photographs assisted Special Agent Thomas in describing the crime scene and helped the jury understand the testimony. The photographs also showed the victim's gunshot wound and the position in which his body was discovered. The photographs depicted images that were not clearly visible on the video and gave the jury a different perspective of the crime scene. *See Airsman v. State*, 2014 Ark. 500, 451 S.W.3d 565; *Smart v. State*, 352 Ark. 522, 104 S.W.3d 386 (2003). Here, after careful consideration, the circuit court found that each photograph served a valid purpose and that the probative value of the photographs outweighed any potential prejudice. We hold that the circuit court did not abuse its discretion in admitting exhibits 14, 15, 16, and 18.

III. *Rule 4-3(i)*

Pursuant to Arkansas Supreme Court Rule 4–3(i) (2016), the record has been reviewed for all objections, motions, and requests that were decided adversely to appellant, and no prejudicial error has been found.

Affirmed.

*Terrence Cain*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Bailey Kane*, Ass't Att'y Gen., for appellee.