ROBERT J. GLADWIN, Judge
Appellant Curtis Roberts appeals his conviction by a Crawford County jury on a charge of murder in the first degree, with an enhancement for committing a felony with a firearm, for which he was sentenced to a total of twenty-five years' imprisonment in the Arkansas Department of Correction. Roberts argues that the trial court erred in allowing into evidence pictures of the victim found on the victim's cell phone and in restricting evidence of the victim's past violent behavior against Roberts that was relevant to his justification defense. We affirm.
On November 30, 2015, Roberts was charged in connection with the shooting death of Roberts's brother, Michael Roberts. Roberts filed a motion in limine seeking to prevent the admission into evidence pictures of the victim found on the victim's cell phone, among other items. At the jury trial, the motion in limine was denied, and Detective Donald Eversole testified regarding the pictures on the victim's cell phone. Roberts's defense to the first-degree murder charge was justification, as set forth in a model jury instruction, AMI Crim. 2d 705; however, his counsel was limited to presenting only the past five years' interactions between Roberts and the victim, rather than introducing evidence to attempt to show what Roberts claimed was a lifetime of abuse inflicted on him by the victim.
The jury found Roberts guilty of murder in the first degree, and he was sentenced to twenty years on the murder charge plus five years on the firearm enhancement, to run consecutive to the twenty-year sentence, pursuant to the sentencing order filed on February 14, 2017. Roberts filed a *448 motion for new trial on March 3, 2017, which was denied by order on April 3, 2017. Roberts then filed a timely notice of appeal on April 4, 2017.
I. Did the Trial Court Err in Ruling No "Fact of Consequence" Was Necessary in Order to Deem the State's Proffered Evidence as "Relevant"?
Evidentiary matters regarding admissibility of evidence are within the sound discretion of the trial court. E.g. , Williams v. State , 374 Ark. 282, 287 S.W.3d 559 (2008) ; see also Williams v. State , 2017 Ark. 287, 528 S.W.3d 839. The appellate court will not reverse a trial court's decision regarding the admissibility of a photograph absent an abuse of discretion. E.g. , Garcia v. State , 363 Ark. 319, 214 S.W.3d 260 (2005). The threshold is high and does not simply require error in the decision, but rather that the trial court acted improvidently, thoughtlessly, or without due consideration. E.g. , Williams , 374 Ark. at 290, 287 S.W.3d at 565.
Arkansas Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pafford v. State , 2017 Ark. App. 700, at 12, 537 S.W.3d 302, 310.
Regarding the admission of allegedly inflammatory photographs, our supreme court has held that the trial court is required to first consider whether such evidence creates a danger of unfair prejudice and then must determine whether the danger of unfair prejudice substantially outweighs its probative value. Williams , 2017 Ark. 287, at 8, 528 S.W.3d at 844. Even the most gruesome photographs are admissible when they are helpful to explain testimony, assist the trier of fact by shedding light on an issue, prove a necessary element of the State's case, corroborate testimony, or enable the jurors to better understand testimony. Garcia , 363 Ark. at 321, 214 S.W.3d at 261-62.
Our supreme court has made it clear that the defendant cannot prevent the admission of a photograph by stipulating to or conceding facts that the State must prove. Garcia , supra ; see also Williams , 374 Ark. at 291, 287 S.W.3d at 566 (holding that the State is entitled to prove its case as conclusively as it can); Holloway v. State , 363 Ark. 254, 213 S.W.3d 633 (2005) (holding that stipulating to a fact surrounding the crime is insufficient to prevent the State from offering photographs that prove the elements). The State is also entitled to prove the elements of the charge with its best evidence. Williams , 374 Ark. at 291, 287 S.W.3d at 566.
In his motion in limine, Roberts sought to exclude pictures that he took on the victim's cell phone after the victim was dead on the basis the pictures were not relevant to any issue in the case. Despite Roberts's stipulating to or admitting that he had shot the victim, the trial court ruled that the pictures were admissible and relevant. Roberts's counsel noted that the trial court failed to articulate what proposition in the case the State was providing the pictures to prove and requested that the State identify the proposition for which the pictures were relevant. The trial court denied that request:
I don't think they are obligated, if there is something the Court has determined is admissible, I don't believe they are obligated to propagate or to boost or to make or to satisfy you relative to it. All that's necessary is the fact the Court determined it's relevant and admissible.
The issue was raised again when the photographic evidence was sought to be admitted, at which time the State asserted that the specific proposition for which the evidence *449 was relevant was Roberts's justification defense.
Roberts argues that the ruling by the trial court is reversible error. Citing Arkansas Rule of Evidence 401, Roberts submits that there was neither determination by the trial court nor explanation by the State of what fact of consequence the pictures made more or less probable. Instead, the trial court stated that the defense was not entitled to know the relevant proposition in the case for which the evidence was being offered. Roberts contends that the trial court implemented a new and incorrect interpretation that it can make a relevancy determination without any associated proposition in the case.
Roberts cites American Jurisprudence: "Relevancy is not an inherent characteristic of any item of evidence, as there must be a relationship between the item and a matter properly provable in the case , which is summarized in Rule 401 as a 'tendency to make the existence' of the fact to be proved 'more probable or less probable.' " 29 Am. Jur. 2d Evidence § 309 (2017) (emphasis added). Although American Jurisprudence speaks to the Federal Rule of Evidence 401, Roberts reminds us that the Federal and Arkansas Rules of Evidence are similar, if not identical, and have a shared philosophy. Roberts argues that it was proper for his counsel to ask for a proposition in the case for which the evidence was relevant to be articulated and claims it was improper for the trial court to find that the State did not have to provide the specific relationship it was trying to prove and for the evidence to have been deemed "relevant" when it was not connected in any relationship to a matter properly provable in the case.
We note that despite the trial court's comment, the State subsequently asserted that the evidence was relevant and went to the "state of mind" aspect of Roberts's justification defense. Roberts urges that there is no relationship between the pictures and the justification defense, which related to what his state of mind would have been-that he needed to defend himself against imminent deadly harm-at the time of the altercation with the victim. The State did articulate a proposition of "state of mind" in support of admitting the photographs, which Roberts acknowledges. Because the State gave a reason for admitting the pictures, and the defendant cannot prevent the admission of a photograph by stipulating to or conceding facts that the State must prove, see Garcia and Williams , supra , we hold that the trial court did not err in allowing the State to prove its case as conclusively as it could.
It is undisputed that Roberts's defense was justification. According to Arkansas Code Annotated section 5-2-607 (Supp. 2015), a person is justified in using deadly physical force upon another if the person reasonably believes that the other person is committing or about to commit a felony involving force or violence; or imminently endangering the person's life or imminently about to victimize the person from the continuation of a pattern of domestic abuse.
The State argued, and we agree, that the pictures at issue go to Roberts's state of mind following the murder. Although Roberts claimed at trial that he killed his brother in self-defense, in his 911 call he indicated it was for "revenge." Later, during an interview, Roberts explained to police officers, "I told him ... he wasn't gonna beat on me anymore and I stopped it." The fact that Roberts used the victim's cell phone to take pictures of the victim supports that theory pursuant to the requirement of Rule 401 as a tendency to make the existence of the fact to be proved more probable or less probable.
*450 Also, because the pictures depict that the victim was shot in the head, the State submits that the pictures are relevant to demonstrate Roberts's intent to shoot to kill his brother. See, e.g. , Ramaker v. State , 345 Ark. 225, 46 S.W.3d 519 (2001) (holding that nature and extent of a victim's wounds are relevant to a showing of intent, which may be inferred from the type of weapon used, the manner of use, and the nature, extent, and location of the wounds ). Because the introduction of the pictures was relevant to the State's theory that Roberts committed first-degree murder and did not kill his brother in self-defense, we hold that the trial court did not err in allowing them to be admitted into evidence.
II. Did the Trial Court Err in Limiting Evidence Relevant to Roberts's Justification Defense?
Arkansas Code Annotated section 5-2-607, through model jury instruction 705, allows that when a defendant feels another is imminently endangering the person's life or imminently about to victimize the person as described in Arkansas Code Annotated section 9-15-103(4) (Supp. 2017) from the continuation of a pattern of domestic abuse, that person can be "justified in using deadly physical force."
At trial, Roberts's counsel attempted to elicit testimony from his sister, Terry Zinkel, regarding past domestic abuse inflicted by the victim against Roberts. While the trial court allowed the corresponding jury instruction to go to the jury, the trial court limited Roberts's ability to present evidence on this point, limiting the scope of the testimony to the last five years-the entire time that Roberts had been back in town and in contact with the victim-although the proffer was that the abuse went back thirty years or more. The following colloquy occurred at side-bar:
THE COURT : It sounds more like sentencing than it does guilt, because she is not reflecting on guilt.
MR. NORRIS : I am laying a foundation with regard to AMCI 705, which allows justification of deadly force when an individual is a domestic violence victim and there is a continuing pattern of domestic violence, and that person believes they are about to be victimized again. She can testify that her father made Michael Roberts and Curtis Roberts fight and Michael Roberts would beat him up repeatedly, and that cycle lasted through their adult life.
THE COURT : But this is not supported by any medical evidence that he suffers from any condition. If we had some medical testimony that he suffered from that, her testimony would be fine. But I don't have any evidence that he suffered any mental disease or any defect which made him susceptible to this.
MR. NORRIS : I don't believe that medical testimony is necessary to show a pattern of domestic abuse. The only thing we need to show is testimony that the abuse occurred and it was a pattern and it continued and the Defendant suffered from it.
THE COURT : Ninety percent of your cases could go back in their history and show some sort of maltreatment, mistreatment and we would be inundated with their lives and what led up to the commission of the offense. Without medical testimony, the case could be laid to bear as far as their whole lives. We don't do that now that we bifurcate the trials.
MR. NORRIS : The section we are talking about is traditionally called Battered Women's Syndrome. There is no necessity of any medical testimony to *451 show that. All I have to show is a cycle. The plain reading of the jury instruction and the statute is a cycle of abuse. There is no expert witness testimony needed for the argument he had [been subjected to] domestic abuse.
MR. MCCUNE : It is all irrelevant. He's only been back five years. This is going back to teenage years and for 30 [years] they had no contact until five years ago.
MR. NORRIS : This goes to state of mind at the time this occurred because a plain reading says, "A pattern of domestic abuse the defendant imminently believes is about to begin again."
THE COURT : The separation of 30 years is an ocean. In order for you to present your defense, I am going to limit-for the guilt phase-testimony to the last five years.
MR. NORRIS : I would proffer to the Court that Ms. Zinkel would testify that when she was around 10 years old, she would observe Curtis at seven and Michael at eight, be instructed by her father to fight each other. Repeatedly Michael was the winner. The father would praise Michael for beating up Curtis, and Curtis was more withdrawn and introverted. That lasted until Curtis left when he was 17. While he was gone for 35 years, he had no contact with Michael, but when he returned, the dynamics started up again, and that is the continuing cycle of abuse. That cycle never ended, and that's why we are here today.
THE COURT : My ruling is the 35 years was a separator-a non-continuous path. I will let you go five years back to establish a continuous path.
Roberts argues that the limitation of the evidence to be presented constitutes reversible error. Appellant cites multiple cases discussing the admission of testimony of prior violent acts of victims, noting that here, he proffered testimony that the victim was violent, had participated in specific violent acts against Roberts, and that the relationship between the victim and Roberts was based in part upon violent acts. Because the violent nature of the victim was known to Roberts, he urges that the testimony should have been admitted.
While acknowledging that evidence far removed in time may affect relevancy, Roberts reiterates that underlying this case was a continuing cycle and pattern of domestic abuse that led him to imminent fear of the victim. Roberts urges that the continuing nature of the abuse over a period of twenty to thirty years prior was specifically relevant.
We hold that the trial court did not err in limiting Roberts's presentation of evidence of prior violent altercations between the victim and him to those that occurred within five years of the murder, which covered the period that Roberts and the victim had resumed and maintained contact with one another.
The trial court ruled that the thirty-five-year gap between their fights as children and the recent altercations as adults was too great to be relevant. Our supreme court has permitted specific instances of past conduct, known to the accused, to be introduced to demonstrate the accused's state of mind. See, e.g. , Smith v. State , 273 Ark. 47, 616 S.W.2d 14 (1981) ; cf. Schnarr v. State , 2017 Ark. 10 (holding that there was no abuse of discretion in disallowing testimony of victim's past violent conduct of which the accused was not aware). Moreover, our supreme court has held that a temporal limitation is not an abuse of discretion. E.g. , Thompson v. State , 306 Ark. 193, 813 S.W.2d 249 (1991) (holding that it was not error for a lower court to rule that an accused could only present *452 prior violent acts of victim, directed at the accused, going back one year prior to the shooting).
The trial court did not prevent Roberts from presenting prior violent acts of the victim toward him; rather, it merely limited the testimony to the previous five years because that was when Roberts returned from Wyoming and began to interact with the victim after a thirty-five-year absence. As in Thompson , the trial court did not err by imposing a temporal limitation to this evidence.
Additionally, we note that Roberts was still able to introduce evidence of prior violent encounters with the victim. Evidence that is cumulative or repetitious of other evidence admitted without objection cannot be prejudicial. Lacy v. State , 2010 Ark. 388, 377 S.W.3d 227. The jury heard specific testimony from Ms. Zinkel, Roberts's sister, that after Roberts had returned to Arkansas, the victim had attacked Roberts on one occasion. The jury also heard testimony from Roberts that the victim had attacked him an additional time. Roberts's argument was that the events from more than thirty-five years ago would have demonstrated to the jury why he was afraid of his brother. Despite the court-imposed five-year limitation, Roberts was still permitted to introduce multiple recent instances in which his brother had attacked him. Thus, imposing the five-year limitation was harmless and did not prejudice Roberts. Accordingly, we affirm.
Affirmed.
Glover and Whiteaker, JJ., agree.