Larry JONES v. STATE of Arkansas

CR 99-630                                          10 S.W.3d 449

Supreme Court of Arkansas
Opinion delivered February 17, 2000

*Bart E. Ziegenhorn*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *James R. Gowen, Jr.*, Ass't Att'y Gen., for appellee.

T OM GLAZE, Justice. Larry Jones was convicted on three counts of capital murder for the deaths of his wife, Sandra Jones, and her two sons, Courtney Jones, 17, and Daron Davis, 10. For his wife's murder, Jones was sentenced to life in prison without possibility of parole; for the murders of the two boys, Jones received two sentences of death by lethal injection. We take jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(a)(2). On appeal, Jones raises seven points for reversal, but because we find that none of them has merit, we affirm.

Because Jones does not challenge the sufficiency of the evidence, we summarize the facts briefly. Sandra Jones spent the evening of April 10, 1998, at the house of her brother-in-law, Gary Jones, visiting and drinking with several friends. She left for home shortly after 10:30 that night. About two hours later, Larry Jones

showed up at Gary's house; Larry told his brother he had "just killed all three of them." Larry asked his brother to come back to his house with him and to provide him with an alibi. On the way back to Larry's house, he told Gary that Sandra had come home and taken a bath; while she was bathing, he claimed he inspected her underwear and found "some discharge" in them.

Larry Jones later gave the police a different story, stating Sandra came into the bedroom, woke him up, and told him that she wanted to break up with him. When he asked why, she allegedly said that she had been unfaithful to him and threw a pair of panties in his face. During their conversation, Jones had been "fixing on" a stack of videotapes with a butterfly knife. As Sandra continued to taunt him about her infidelity, Jones said, he hit her. "I thought I was hitting her with my right hand ... the hand I had my butterfly knife in. I hit her twice. I thought I was hitting her in the face area, but it turned out that I hit her twice in the neck." Sandra died of a single slicing stab wound that penetrated four and a half inches through her neck.

Jones further claimed that the two boys came in while he and Sandra were fighting and that he only swung at them to push them away from him. Courtney died in the kitchen, having been struck twice with the knife; his right carotid artery was severed with a blow that sliced approximately four and three-eighths inches through his neck. Daron, whose body was found on the floor next to his bed in the front bedroom, sustained four wounds; his jugular vein was cut, and the muscles that supported his larynx were severed. Gary Jones later testified that it looked like "his throat was almost cut off."

Larry Jones opened a window in a back bedroom, and then called the police to report that someone had broken into his house and murdered his family. When the police arrived, Gary Jones told them that his brother had confessed to the killings. Larry was arrested, given his *Miranda* warnings, and taken to the police station.

Following a jury trial in February of 1999, Jones was convicted on all three counts of capital murder. The jury found that four aggravating circumstances existed and no mitigating factors were present; thus, they sentenced Jones to death for the murders of

Courtney Jones and Daron Davis and to life in prison for the murder of Sandra Jones.

For his first point on appeal, Jones argues that the trial court erred in granting the prosecutor's motion to suppress evidence that an autopsy report showed Sandra Jones to have cocaine in her bloodstream. In its motion, the State asserted that the finding of cocaine was not relevant to the cause of death, and would be extremely prejudicial. The defense responded that the evidence could be probative of the issue of whether or not Sandra was likely to have provoked Jones to react as he did. The trial court granted the motion before the trial began, agreeing that the cocaine evidence would be more prejudicial than probative, and noting that there was nothing to show that the cocaine had anything to do with the confrontation. However, the court said that if, during the trial, any proof to that effect was shown, he would reconsider his ruling.

No such proof was adduced at trial, and as the court considered the likely effect that the evidence would have on the jury, it reiterated several times that it would be highly prejudicial. The court offered Jones the opportunity to introduce the less inflammatory evidence that Sandra had a blood-alcohol content of .13% in order to support his theory that she was acting aggressively and provoked him; however, he declined to do so.

Although all relevant evidence is admissible, Ark. R. Evid. 402, even relevant evidence can be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. Ark. R. Evid. 403; *Smith v. State*, 33 Ark. App. 37, 801 S.W.2d 655 (1990). Trial courts have broad discretion in deciding evidentiary issues, including the admissibility of evidence under Rule 403, and those decisions will not be reversed absent an abuse of discretion. *Williams v. State*, 338 Ark. 97, 991 S.W.2d 565 (1999).

In this instance, we can find no abuse of discretion in the trial court's decision. No evidence was ever introduced to show that the cocaine was linked to the murder. Indeed, it was Sandra's alleged infidelity, not her use of cocaine, that led to the altercation between her and Jones. Because the defense was unable to show that the cocaine use prompted the killing, the trial court did not err

in ruling that the probative value of the evidence was far outweighed by its prejudicial nature.

The defense also attempted to introduce the cocaine usage in response to the prosecution's introduction of character evidence. During the trial, when the last of three witnesses testified that Sandra was a "good, sweet, nice person," Jones finally objected to such testimony and asked to be allowed to cross-examine the witness about the cocaine. The trial court sustained the objection and refused to permit this line of questioning, admonishing the prosecutor that he was putting Sandra's character into issue. While Jones argued that the State had "opened the door" to allowing the cocaine evidence, the trial court stood on its earlier ruling that the probative value of this evidence was outweighed by the danger of prejudice.

■ On this point, we first note that Jones did not object to the first two witnesses who testified as to Sandra's character. We have frequently held that a contemporaneous objection must be made to the trial court before we will review an alleged error on appeal. *State v. Donahue*, 334 Ark. 429, 978 S.W.2d 748 (1998). Thus, this argument is procedurally barred.

■ Finally, we note that even if the trial court erred in its decision to exclude this evidence, the error was harmless in light of the overwhelming evidence of Jones's guilt. *See Abernathy v. State*, 325 Ark. 61, 925 S.W.2d 380 (1994). Jones confessed the killings to his brother and attempted to use his brother to create an alibi for himself. He lied to the police when they began to question him, telling them that he came home and found the bodies. He only admitted to the murders after the police informed him that his brother had given them a differing version of the evening's events. In addition, there was overwhelming evidence that Jones acted with premeditation and deliberation, and not out of a sudden rage provoked by Sandra. He told his brother that he had inspected Sandra's panties while she took a bath, contradicting his story to the police that she had thrown them at him. Evidence showed that Daron was killed in his bed, and that Courtney was attacked in the kitchen as he entered the house later in the evening. In light of this evidence, the trial court's decision to exclude evidence of Sandra's cocaine use cannot be said to be reversible error.

For his second point on appeal, Jones contends that the trial court erred in admitting five photographs of the crime scene. Three photos showed Daron's body (two full-length shots and one close-up of his face), one showed Courtney's face and wounds, and one depicted Sandra's face and wounds. Jones objected to these photographs at trial on the basis that they were gory, inflammatory, and did not accurately depict the scene. This last point arose from the fact that one police officer testified that he was certain that he found Daron's body on his bed, but the photo showed the boy's body lying on the floor.

The prosecutor responded that although the photos were gruesome, they helped establish the premeditated and deliberate nature of the crime and, because they demonstrated that all three victims suffered from similar lethal neck wounds, refuted Jones's theory that he had accidentally hit the victims as they struggled. The trial court overruled Jones's objection and allowed the photos into evidence.

■ ■ On appeal, Jones now argues that the introduction of the photographs was in error because they were cumulative and unduly prejudicial. However, Jones did not raise the cumulative argument below, and therefore, that point is not preserved. *See* *Tabor v. State*, 333 Ark. 439, 971 S.W.2d 227 (1998). As for his second contention, that the photos were prejudicial, we restate the following general rules with which we comply when dealing with the admissibility of photographs.

> This court has often stated that the admission and relevancy of photographs is a matter within the sound discretion of the trial court, and the mere fact that photos are inflammatory will not render them inadmissible. *Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996). Even the most gruesome photos may be admissible if they tend to shed some light on any issue, to corroborate testimony, or if they are essential in proving a necessary element of the case, are useful to enable a witness to testify more effectively, or enable the jury to better understand testimony. *Jones v. State*. 329 Ark. 62, 947 S.W.2d 339 (1997). Other acceptable purposes are to show the condition of the victims' bodies, the probable type or location of the injuries, and the position in which the bodies were discovered. *Id.*

*Greene v. State*, 331 Ark. 1, 26, 977 S.W.2d 192 (1998); *see also Camargo v. State*, 327 Ark. 631, 940 S.W.2d 631 (1997).

■ Here, the photos were introduced not for shock value, but to show the premeditated and deliberate nature of the murders. In addition to proving a necessary element of the crime, they also showed the condition of the bodies and the locations of the injuries. The trial judge engaged in the kind of balancing required under Rule 403, and he did not abuse his discretion in allowing the photographs to be admitted.

■ Jones's third point on appeal is that the introduction of victim impact evidence was reversible error. He contends that the testimony from the victims' families was not relevant to any aggravating factor and violated his Fifth, Sixth, and Fourteenth Amendment rights. While Jones asks this court to reconsider our prior rulings on this subject, he provides us with no compelling reason to do so. Ark. Code Ann. § 5-4-602(4) (Repl. 1997) specifically allows the State to introduce victim impact evidence during the sentencing phase of capital murder trials, and we have repeatedly upheld the constitutionality of this statute. *See Williams v. State*, 338 Ark. 97, 991 S.W.2d 565 (1999); *Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998); *Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943 (1996).

For his fourth point, Jones argues that the trial court erred in submitting both of the following aggravating factors: Ark. Code Ann. § 5-4-604(4) (Repl. 1997), that the defendant caused the death of more than one person in the same criminal episode, and Ark. Code Ann. § 5-4-604(5) (Repl. 1997), that the murders were committed for the purpose of avoiding or preventing arrest. He contends that the mere fact that he committed more than one murder does not necessarily lead to the conclusion that the later ones were committed in order to avoid being arrested.

■ However, we have held that whenever there is any evidence of an aggravating or mitigating circumstance, however slight, the matter should be submitted to the jury for consideration. *Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943 (1996). On appellate review of a finding of an aggravating circumstance, the question is whether there was substantial evidence to support the jury's finding that the aggravating circumstance was proven beyond a reasonable doubt. *Willett v. State*, 335 Ark. 427, 983 S.W.2d 409 (1998). The suffi-

ciency of the evidence is reviewed in the light most favorable to the state. *Kemp*, 324 Ark. at 200.

■ Although Jones contended at trial that he killed the two boys accidentally, forgetting there was a knife in his hand when he swung at them in a rage, the State presented evidence that Jones killed Daron in his bed and killed Courtney later as the boy entered the house. Both boys were murdered after Sandra was killed. They were the only potential witnesses to the murder of Sandra, and the killing of both boys would further Jones's alibi that an intruder broke in and murdered all three victims. In addition, the nature of their wounds does not support an inference that Jones accidentally hit them with the knife when he was trying to fend them off. Viewing this evidence in the light most favorable to the state, as we must, there was substantial evidence not only to warrant submitting this aggravating factor to the jury, but also to support the jury's finding that this factor existed beyond a reasonable doubt.

■ Jones also argues that these two aggravating factors are inconsistent and mutually exclusive, although he offers no law in support of this proposition. Ark. Code Ann. § 5-4-602(4) (Repl. 1997), however, allows the jury to consider evidence as to *any* matter relating to the aggravating circumstances enumerated in § 5-4-604; additionally, the jury may consider any aggravating circumstance for which there is the slightest evidence, although it must be convinced beyond a reasonable doubt that the circumstance exists. *Willett*, 335 Ark. at 435-36. Here, there was clearly evidence to support the submission of both aggravating factors, and the trial court did not err in submitting them simultaneously.

■ Jones's fifth argument on appeal is that there was insufficient evidence to support the submission of Ark. Code Ann. § 5-4-604(8) — that the murder was committed in an especially cruel or depraved manner — as an aggravating factor. We need not discuss this sufficiency-of-the-evidence argument, because even if the evidence failed to support the conclusion that Jones committed the murders in a cruel or depraved manner, such an insufficiency would be harmless error because the jury found no mitigating factors existed. We conduct a harmless error review as follows:

> On appellate review of a death sentence, if the Arkansas Supreme Court finds that the jury erred in finding the existence of any aggravating circumstance or circumstances for any reason and if the

jury found no mitigating circumstances, the ... Court shall conduct a harmless error review of the defendant's death sentence. The ... Court shall conduct this harmless error review by:

> (1) Determining that the remaining aggravating circumstance or circumstances exist beyond a reasonable doubt; and

> (2) Determining that the remaining aggravating circumstance or circumstances justify a sentence of death beyond a reasonable doubt.

Ark. Code Ann. § 5-4-603(d) (Repl 1997).

■ The jury in Jones's case found four aggravating circumstances existed: 1) he had committed prior violent felonies; 2) the murders were committed for the purpose of avoiding or preventing arrest; 3) the commission of the murders caused the death of more than one person in the same criminal episode; and 4) the murders were committed in an especially cruel or depraved manner. Even striking this fourth factor, three factors remain, each of which, standing alone, would justify the imposition of a death sentence in the absence of any mitigating factors. Thus, any error by the trial court in submitting this aggravating circumstance to the jury would be harmless, and this point does not present a ground for reversal.

For his sixth argument on appeal, Jones contends that the prosecutor made a veiled reference to Jones's failure to testify during his closing argument, and the trial court erred in denying his motion for a mistrial on that point. During his own closing argument, Jones again asserted his theory that the crime was committed in the heat of passion and that he had only been provoked by his wife's statements of infidelity: "These are things that would incite any husband. What were the things this couple was doing ten days earlier? Do they hate each other so much that this guy was planning to kill her ten days before? No. ... They had been off on an over-the-road truck trip.... They came home, cleaned up, and had relations. They were living like any other normal family would be living."

In response, the prosecutor made the following statement: "He talks about his loving wife. Why would Larry Jones do this to his loving wife? What remorse when he says loving wife did you see in this case? Absolutely no [sic]. You didn't see any remorse." Defense counsel immediately objected, moving for a mistrial on the grounds

that the prosecutor had impermissibly commented on Jones's failure to testify. The trial court denied the motion, but warned the prosecutor to "stay away from that."

A mistrial is a drastic remedy, to be employed only when an error is so prejudicial that justice cannot be served by continuing the trial and when it cannot be cured by an instruction. *Gates v. State*, 338 Ark. 530, 21 S.W.3d 40 (1999). The decision to grant a mistrial is within the sound discretion of the trial court, and will not be overturned absent a showing of abuse or upon manifest prejudice to the complaining party. *Id.* When a prosecutor is alleged to have made an improper comment on a defendant's failure to testify, we review the statements in a two-step process.

> First, we determine whether the comment itself is an improper comment on the defendant's failure to testify. The basic rule is that a prosecutor may not draw attention to the fact of, or comment on, the defendant's failure to testify, because this then makes the defendant testify against himself in violation of the Fifth Amendment. A veiled reference to the defendant's failure to testify is improper, as well. Should we determine that the prosecutor's closing argument statement did indeed refer to [the defendant's] choice not to testify, we would then determine whether it can be shown beyond a reasonable doubt that the error did not influence the verdict.

*Id.* at 538.

Here, the prosecutor's comment was not a veiled reference to Jones's failure to testify; rather, the prosecutor was referring to Jones's lack of remorse as evidenced by his statements to his brother and to the police and by his actions after the murders. His brother Gary testified that Jones "looked mean" and that there were no tears in his eyes when he confessed to the killings. Jones did not cry until after he had called the police, and Gary said that this was "because he knew what he had done, and he was going to be in trouble for it." Jones asked his brother to lie for him to the police, and he concocted a story to hide his own guilt. This was evidence, completely aside from Jones's own non-appearance on the witness stand, on which the prosecutor was free to comment.

In addition, Jones essentially invited the statements by making comments during his own closing arguments that were meant to imply how much he loved his wife. When a defendant

opens the door to the State's comments, he cannot complain about it later. *Sheridan v. State*, 313 Ark. 23, 852 S.W.2d 772 (1993). For these reasons, the trial court did not err in refusing to grant a mistrial.

Jones's final point on appeal is that the imposition of the death penalty was improper because he fit the current definition of a mentally retarded person. He challenges the statute that creates a rebuttable presumption of mental retardation when a defendant has an intelligence quotient of 65 or below, Ark. Code Ann. § 5-4-618(a)(2) (Repl. 1997), and argues that this standard should be replaced with a more progressive one, established by the current Diagnostic and Statistical Manual and followed in other jurisdictions, that sets the standard at an IQ of 70. However, the standard of 65 is our law, and therefore, Jones cannot show that he was prejudiced by the failure to use this suggested higher standard. Even if his argument had merit, Jones could not benefit from our adopting the so-called current standard of an IQ of 70 because his own expert evaluated Jones as having an IQ of at least 71.

The record has been examined in accordance with Ark. Sup. Ct. R. 4-3(h), and it has been determined that there were no rulings adverse to Jones which constituted prejudicial error. Therefore, we affirm.