KAREN R. BAKER, Associate Justice
Appellant John Drennan was convicted by a Hot Spring County Circuit Court jury of first-degree murder and sentenced to life imprisonment. On appeal, Drennan argues that (1) the circuit court abused its discretion by excluding a toxicology report showing controlled substances in the victim's body; and (2) there was insufficient evidence to convict him of first-degree murder. Because this is a criminal appeal in which life imprisonment has been imposed, this court has jurisdiction pursuant to Arkansas Supreme Court Rule 1-2(a)(2). We affirm.
On October 12, 2015, Drennan, his wife Amber, and her two children were traveling on Highway 9 in Hot Spring County. Amber was driving the vehicle, Drennan was in the front-passenger seat, and Amber's two children, C.E. and J.E., were in the back seat. At approximately 4:00 p.m., Drennan discharged a firearm inside the vehicle, fatally wounding Amber.
At trial, Gavin Alston testified that prior to the shooting, he and his friend Michael Hoffman were traveling down Highway 9 to go hunting. Alston testified that as he topped a hill, he could see a man and a woman standing on the edge of his lane of the highway and that they were fighting. Alston testified that the man was "pushing on the woman a little bit." Alston further testified that he saw two children in the ditch watching the man and the woman fight. Alston kept driving as Hoffman called 911.
Hoffman testified that he was a passenger in Alston's vehicle and the two were *264 going deer hunting. As Alston and Hoffman topped a hill on Highway 9, Hoffman saw a man and a woman standing in the road. Hoffman saw the man push the woman in her chest area. Hoffman further testified that he saw a vehicle in the ditch and two little boys standing beside the vehicle. Hoffman testified that he called 911. Hoffman's 911 call was played for the jury. In the recording, Hoffman reported that he thought there had been a wreck on Highway 9.
C.E., Amber's son, was eight years old at the time of trial. He testified that on the day of the shooting, he had ridden the school bus from school. He then got into the vehicle with his mother, Amber, and his stepfather, Drennan. C.E. testified that Amber was driving and that Drennan was in the front-passenger seat with a gun in his lap. C.E. testified that he was seated behind Drennan and that C.E.'s brother, J.E., was seated behind Amber. While they were driving down the road, one of the tires on the vehicle went flat, and the vehicle ran off the road. C.E. testified that at one point, Drennan and Amber jumped out of the vehicle while it was still moving. The vehicle ultimately stopped when it ran into the ditch. Drennan and Amber got back into the vehicle and began driving again. C.E. testified that at another point while Amber was driving, Drennan pointed the gun toward the floor, "pretty much at my mom's leg." Amber pushed the gun away so "she wouldn't get [shot]." C.E. testified that Drennan told Amber twice to stop the vehicle, and both times Amber said no. C.E. testified that after Drennan asked Amber to stop for the second time, he pointed the gun at Amber and pulled the trigger. C.E. testified that he saw Drennan pull the trigger and the bullet went into Amber's neck. C.E. further testified that as the vehicle was coming to a stop, Drennan jumped out and started shooting at a blue truck and then ran off into the woods.
J.E., Amber's other son, was seven years old at the time of trial. He testified that on the day of the shooting, he rode with his mother and Drennan to pick up C.E. from the bus stop. After picking up C.E., and as the family was driving down the road, one of the tires went flat and the vehicle ran into the ditch. J.E. testified that Amber and Drennan then got out of the car, and Drennan chased Amber with a long gun. J.E. recalled Amber telling Drennan to "stop," and then Amber and Drennan returned to the vehicle. With regard to the location of the gun, J.E. testified that the gun was in Drennan's lap, inside a pair of blue jeans that Drennan was holding, with the barrel pointing outside "where the leg goes through." J.E. testified that Drennan told Amber that he loved her and then raised the gun out of his lap and shot her with the gun still inside the jeans. J.E. testified that Drennan shot at a blue diesel truck before he ran into the woods.
Dr. Jennifer Forsyth, Assistant Chief Medical Examiner at the Arkansas State Crime Laboratory, testified that she performed the autopsy on Amber. Dr. Forsyth testified that Amber had a gunshot wound to her head and that the entrance wound was located on Amber's right cheek, next to her ear, and the large exit wound was located on the back of her head.
Brady Gardner testified that on the day of the shooting, as he was heading home on Highway 9, he passed a vehicle with its passenger side "dragging the ground, it looked like, sparks flying, smoke everywhere[.]" He testified that after he passed the vehicle, he thought, "Well, let me go back and see if I can help these people." Gardner turned around and saw a terrified, frantic lady driving the vehicle. Gardner *265 testified that after he saw the lady's arms flailing around, he got a "real bad feeling." Gardner turned his car back around, pulled off the highway, and got out his cell phone with the intent to call 911. However, he did not have cell phone service. Gardner testified that when he looked up, he saw a man with a gun. The gun had something wrapped around it, but Gardner testified that he knew in his heart "that [it was] a gun." Gardner lay down in his seat and then heard a bullet hit his truck. Gardner then looked back up and saw two little boys standing where the man had been standing. Gardner testified that he immediately drove to the waste station. There, he asked an employee to call 911. With regard to the condition of his truck, Gardner testified that steam was blowing everywhere because a bullet had gone through his radiator.
Roy Overton testified that on the day of the shooting, as he was driving down Highway 9 on his way home from work, he observed two boys standing in the middle of the road. Overton pulled over and got the boys out of the road. Overton testified that the boys told Overton that "momma had a wreck." As Overton walked over to check on the boys' mother, he heard two or three rifle shots that came from the woods approximately fifty yards away.
Russ Rhodes, a special agent with the criminal investigation division of the Arkansas State Police, testified that he took pictures of the crime scene area. Rhodes testified regarding the evidence collected at the crime scene. Specifically, Rhodes testified that the jeans found at the scene appeared to be new because there was still a sticker on them. Rhodes also testified that the crime lab noted tears and dark discoloration on the jeans. Rhodes testified that the dark discoloration appeared to be gun residue. Rhodes testified that based on the condition of the jeans, it was possible that the pants could have been wrapped over the firearm and the firearm, could have been fired from inside the jeans.
Thomas Ford, a special-response-team agent with Arkansas Community Correction, testified that he was notified that authorities were searching for Drennan in the woods on Highway 9 just outside Malvern. Ford specializes in fugitive apprehension. Ford testified that his team received a tip and ultimately located Drennan at his mother's house.
Based on the above evidence, the jury convicted Drennan of first-degree murder and committing a terroristic act. Drennan was sentenced to life imprisonment.[1] This appeal followed.
I. Sufficiency of the Evidence
Although Drennan raised his argument that there was insufficient evidence to sustain his conviction of first-degree murder as his second point on appeal, we address such a challenge first for purposes of double jeopardy. Sweet v. State , 2011 Ark. 20, 370 S.W.3d 510. On appeal, a motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. Reynolds v. State , 2016 Ark. 214, 492 S.W.3d 491. This court views the evidence in the light most favorable to the State and affirms if there is substantial evidence to support the verdict. Id. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to *266 speculation or conjecture. Id. This court does not weigh the evidence presented at trial or assess the credibility of the witnesses, because those are matters for the fact-finder. Id. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. Id. Only evidence supporting the verdict will be considered. Leaks v. State , 345 Ark. 182, 45 S.W.3d 363 (2001).
With these standards in mind, we turn to Drennan's sufficiency-of-the-evidence argument. At the close of the State's case-in-chief, Drennan's counsel moved for a directed verdict, stating that with regard to first-degree murder, the State has not provided any evidence that Amber's death was caused purposely. Drennan argued that the State failed to present testimony as to intent, motivation, planning, or purposeful act. Drennan's counsel renewed his motion at the conclusion of Drennan's case-in-chief.
A person commits murder in the first degree if:
(1) Acting alone or with one (1) or more other persons:
(A) The person commits or attempts to commit a felony; and
(B) In the course of and in the furtherance of the felony or in immediate flight from the felony, the person or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life;
(2) With a purpose of causing the death of another person, the person causes the death of another person....
Ark. Code Ann. § 5-10-102(a) (Repl. 2013). Intent is seldom capable of proof by direct evidence and must usually be inferred from the circumstances surrounding the killing. Starling v. State , 301 Ark. 603, 786 S.W.2d 114 (1990). The intent necessary for first-degree murder may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds. Garza v. State , 293 Ark. 175, 735 S.W.2d 702 (1987). A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1). The purpose to commit a crime can be formed in an instant. Tarentino v. State , 302 Ark. 55, 786 S.W.2d 584 (1990).
Drennan specifically challenges the sufficiency of the evidence presented by the State to prove that he purposely shot Amber. We find no merit in Drennan's argument. The evidence presented at trial, viewed in the light most favorable to the State, supports the jury's determination that Drennan purposely fired the fatal shot into Amber's right cheek while at close range inside their vehicle.
First, we note Alston's and Hoffman's testimony that Drennan and Amber were fighting in the highway just before the shooting occurred. Additionally, C.E. testified that after Drennan asked Amber for the second time to stop the vehicle, he pointed the gun at Amber and pulled the trigger. This testimony supports the State's position that Drennan purposely shot Amber. C.E. also testified that he saw Drennan pull the trigger and he saw the bullet go inside his mother's neck. Likewise, J.E. testified that Drennan told Amber that he loved her and then he raised the gun out of his lap and shot her. Both C.E.'s and J.E.'s testimony makes it abundantly clear that Drennan raised the gun and fatally shot Amber.
Here, based on C.E.'s and J.E.'s testimony alone, we conclude that there *267 was sufficient evidence that Drennan acted with purpose to cause Amber's death. However, we also note that C.E., J.E., and Gardner all testified that prior to running into the woods, Drennan fired a shot at Gardner. The fact that Drennan fired a gun at Gardner also supports the State's evidence that Drennan purposely shot Amber and cuts against Drennan's accidental-discharge theory. Further, we have said that flight to avoid arrest is admissible as a circumstance in corroboration of evidence tending to establish guilt. Mason v. State , 285 Ark. 479, 688 S.W.2d 299 (1985). Also, as discussed above, the credibility of witnesses is an issue for the jury, and this court will not second-guess the credibility determinations made by the fact-finder. Stone v. State , 348 Ark. 661, 74 S.W.3d 591 (2002). The jury is free to believe all or part of any witness's testimony, to resolve questions of conflicting testimony and inconsistent evidence, and to believe the State's version of the facts rather than the defendant's. Id.
In sum, based on the type of weapon used, the manner of its use, and the location of Amber's wound, the jury could reasonably have inferred that Drennan purposely killed Amber. Viewing the evidence in the light most favorable to the State, we hold that substantial evidence supports Drennan's first-degree-murder conviction.
II. Toxicology Report
Next, Drennan argues that the circuit court abused its discretion by excluding a toxicology report showing the presence of a controlled substance in Amber's body. On May 30, 2017, the State filed a motion in limine to exclude evidence of drugs found on the person or in the body of Amber. In its motion, the State explained that during the course of the autopsy, the medical examiner located a small bag of methamphetamine in Amber's pocket, and a urine screen returned positive for methamphetamine and amphetamine metabolites. The State argued that there is no evidence that the methamphetamine on Amber's person or in her body was in any way linked to her murder. Specifically, the State argued that the evidence should be excluded from introduction under Rule 403 of the Arkansas Rules of Evidence because its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues.
In response to the State's motion, Drennan argued that the issue before the circuit court was whether the presence of drugs in Amber's system was relevant to the body of evidence that the jury was asked to consider. Drennan argued that if Amber's actions were being put forth before the jury, then the jury had the right to know the context of those actions to properly determine what was more or less likely to be true.
The circuit court granted the State's motion and explained that any relevance this evidence might have would be substantially outweighed by the prejudicial effect that it might have. However, the circuit court noted that it would consider any evidence during trial and would reconsider its ruling if necessary.
Prior to Dr. Forsyth's testimony, Drennan requested that the circuit court reconsider the motion. A hearing on the motion was held in chambers. The circuit court ruled as follows:
What I have heard thus far has been two (2) children testifying. And they went through a lot of questioning and -- and yes, there were some different answers. This was a year and a half or two (2) years ago. And the thing they didn't waver from and what I understood was, number one (1), that the defendant was the sole person in the custody of that *268 gun during this whole incident and, number two (2), that he raised that gun and he shot their mother in the neck.
....
I fail to see, based on the testimony that I've heard, anything that would be relevant in regards to what if she ... being the victim, had methamphetamine in her system, which from my ... understanding, was not quantified and on her person. I just fail to see what would be relevant, but even if I have missed some relevance somewhere, under 403, the relevance would be substantially ... outweighed by the prejudicial effect, based on what I've heard so far ... my ruling stands. And, again, my ruling stays open.
Later, Drennan again asked the circuit court to reconsider its ruling, and the circuit court ruled as follows:
[B]ased on your motion to reconsider and ... your other motions ... the motion to exclude that is granted and my reasoning of--number one (1), is that whatever relevance it might have, and I see very little, but even if I'm missing some of that ... the--probative value would be outweighed substantially by the prejudicial effect. As [the State] has said, there's no quantification of the drugs that were--was in her system. You know, the jury could speculate just hearing--merely hearing that she had a metabolite of methamphetamine in her system.
Based on the testimony I have thus far, there's no indication that she lunged or grabbed the gun or anything like that and we had two (2) children testify. Even though some of the things they remembered were different, but it was fairly consistent that, at least from their testimony, he raised the gun and fired. Nothing from their testimony indicated she was flaying at him.
I understand your argument in that her actions were not normal on that day, but there's also testimony that, at least what could be inferred, they were having a heated argument of some type about the stopping or her not stopping[.]
....
[T]he probative value of any of that evidence would be substantially outweighed by the prejudicial effect.
The circuit court has wide discretion in admitting evidence, and its discretion will not be reversed without an abuse of discretion. Huff v. State , 2012 Ark. 388, 423 S.W.3d 608 (citing Hill v. State , 318 Ark. 408, 415, 887 S.W.2d 275, 278 (1994) ).
Arkansas Rule of Evidence 401 defines "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Ark. R. Evid. 401. However, evidence that is not relevant is not admissible. Ark. R. Evid. 402. Even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ark. R. Evid. 403.
On appeal, Drennan argues that there was proof at trial that Amber was driving erratically and flailing her arms. Thus, Drennan argues that Amber's use of methamphetamine can be tied to her erratic behavior, which in turn leads to the plausible argument that the discharge of the firearm was an accident. Further, Drennan contends that the testimony that the rifle was wrapped in a pair of jeans supported the defense's theory that Drennan accidentally shot Amber.
In response, the State argues that this court rejected Drennan's precise argument in Jones v. State , 340 Ark. 390, 10 S.W.3d 449 (2000). In Jones , the defense attempted *269 to introduce the victim's toxicology report into evidence. The defense claimed that the report could be probative of the issue of whether the victim was likely to have provoked the appellant to react as he did. The circuit court ruled that it was proper to exclude the report because it would be more prejudicial than probative and further noted that there was nothing to show that the cocaine had anything to do with the confrontation. Finding no abuse of discretion in the circuit court's decision, we affirmed. We explained that no evidence was introduced to demonstrate that the drug use was linked to the murder.
Despite Drennan's arguments to the contrary, we agree that the present case is analogous to Jones . As in Jones , Drennan failed to introduce evidence to demonstrate that Amber's methamphetamine use was linked to the murder. Drennan points to Amber's erratic driving and the flailing of her arms in an attempt to demonstrate a nexus between her methamphetamine use and his discharge-of-a-firearm defense. However, as the circuit court noted, there was no "quantification" of the drugs in Amber's system. Stated differently, Drennan has failed to prove that Amber was under the influence at the time of the shooting. Thus, without more, the mere presence of methamphetamine on Amber's person and of methamphetamine and amphetamine metabolites in Amber's urine fails to demonstrate that Amber's drug use was linked to her murder. Considering the broad discretion of the circuit court in admitting evidence, we cannot say that the circuit court abused its discretion when it concluded that the probative nature of the challenged evidence would be substantially outweighed by the danger of unfair prejudice.
Because Drennan received a sentence of life imprisonment, pursuant to Arkansas Supreme Court Rule 4-3(i), we are required to review the record for all objections, motions, and requests that were decided adversely to him. No reversible error has been found in our review.
Affirmed.

In addition to his life sentence, Drennan was sentenced to an additional 960 months' imprisonment for his terroristic-act conviction and for his enhancements for the use of a firearm during the commission of his crimes. However, Drennan's sufficiency-of-the-evidence claim is limited to his first-degree-murder conviction.