Cite as 2023 Ark. App. 409

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CR-22-749

| | |
|---|---|
| GABRIEL EMMANUEL WALTON<br><div align="right">APPELLANT</div><br>V.<br><br>STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | Opinion Delivered September 27, 2023<br><br>APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT<br>[NO. 16JCR-21-249]<br><br>HONORABLE CINDY THYER, JUDGE<br><br>AFFIRMED |

**RITA W. GRUBER, Judge**

A Craighead County jury convicted appellant Gabriel Walton of manslaughter and tampering with evidence. He was sentenced to an aggregate term of 540 months' imprisonment. Walton challenges the sufficiency of the evidence to support the convictions and argues that the circuit court erred in excluding the toxicology report of the victim. We affirm.[1]

---

[1]We note that appellant's statement of the case and facts does not meet the requirements set out in Arkansas Supreme Court Rule 4-2(a)(6) (2022), which provides that the appellant's brief "shall contain a concise statement of the case and the facts without argument" and "shall identify and discuss all material factual and procedural information contained in the record on appeal." Here, the statement of the case consists of one paragraph basically stating that appellant was charged, tried, and convicted. Rule 4-2(b) allows an appellee's brief to supplement the statement of the case if the appellee believes it to be insufficient, which the State did in this case. We are not ordering rebriefing *this time* because it is not in the interest of judicial economy to do so. However, we strongly caution the parties to closely read the rules applicable to appeals and follow them to avoid a rebriefing order.

On August 29, 2020, Ronald Voyles was found dead on the bedroom floor in his home. He was wearing only his socks and had nine stab or slash wounds to his body. Voyles was covered head to toe in blood, and large amounts of blood were on the bedspread and carpet, along with blood splatters on multiple walls, the door, and items in the bedroom. Two of the stab wounds were described by the medical examiner as fatal. One was four inches deep to the left side of Voyles's neck, which cut the strap muscles and severed the left carotid artery and jugular vein. The other was a six-inch wound to the front of his throat that severed the trachea and transected the left carotid artery and jugular vein. In addition, there were three wounds to his left shoulder and one to his left chest, upper back, left thigh, and right forearm. The Jonesboro Police Department developed Walton as a suspect from phone records that revealed multiple text messages to Voyles on Thursday, August 25.

After his arrest, Walton was interviewed by police, a portion of which was played at trial. In this interview, Walton stated that during the afternoon, Voyles had picked him up and said he needed help "moving some stuff." Voyles brought Walton to Voyles's house and started talking about being bisexual and watching pornography. Walton told Voyles he was not bisexual. Walton stated that Voyles smoked marijuana, smoked drugs out of a soda can, and offered to sell him drugs. Voyles offered Walton a "hydro," which he took. Walton thought Voyles had put something in his drink because it looked like "something was dissolved in the bottom." Walton said anger was building "up right then," and he asked Voyles what he wanted moved. Walton said he began to move a shelf in the bedroom when Voyles walked in "completely naked," and he thought Voyles was coming at him sexually.

Walton told police that when he tried to pass by Voyles, Voyles attempted to push him on the bed, at which point a "little physical altercation" ensued. The next thing Walton remembered was that he had his knife in his hand, and he threatened Voyles and told him to move because he was blocking the door. Walton stated that he "accidentally" stabbed Voyles on the side of his neck when he attempted to push past Voyles. He was pretty sure he stabbed him again. Walton said Voyles fell and was not getting up, at which point he got his "stuff" and left. He told police that he picked up some of the "stuff that was knocked over" and that when he left Voyles's home, he took the rag he had used to wipe down the surfaces that he had touched.

On February 25, 2021, the State charged Walton with first-degree murder and tampering with physical evidence. The State amended the information on April 14, 2022, to include a habitual-offender enhancement, alleging that Walton had previously been convicted of four or more felonies.[2] The State filed a pretrial motion in limine to exclude the toxicology report of Voyles indicating he was positive for cocaine, which was later granted by the circuit court. A jury trial took place over several days in August 2022. The case was submitted to the jury on first-degree murder, second-degree murder, and extreme-emotional-disturbance manslaughter, as well as tampering with physical evidence—all felonies. The jury convicted Walton of extreme-emotional-disturbance manslaughter and tampering with physical evidence. He was sentenced to 360 months' and 180 months' imprisonment,

---

[2]The State filed a second amended information on August 11, 2022, adding eight counts of battery. These were dismissed by the circuit court at trial.

respectively, to be served consecutively. Walton appeals from the August 15, 2022 sentencing order.

Walton first argues that the evidence is insufficient to support the manslaughter conviction. The State argues, however, that Walton's challenge to the sufficiency of the evidence to support the manslaughter conviction is not preserved. We agree.

In order to preserve challenges to the sufficiency of the evidence supporting convictions for lesser-included offenses, defendants must address the lesser-included offenses either by name or by apprising the circuit court of the elements of the lesser-included offenses. *Grillot v. State*, 353 Ark. 294, 304, 107 S.W.3d 136, 142 (2003). Walton's directed-verdict motion initially addressed only first-degree murder. After the motion, the following colloquy occurred between the court and defense counsel:

COURT:      Yes, before you step aside were there any other motions that you wanted to make –

COUNSEL:    No, Your Honor.

COURT:      ~ for sufficiency of the evidence. For murder in the second-degree, manslaughter, any lesser included instructions?

COUNSEL:    I'm going to offer the manslaughter jury instruction. But I don't think I'm going to argue it, at this time. And Your Honor's decision in first-degree, I think covers second-degree.

COURT:      My understanding of the law is to preserve an argument, relating to the sufficiency of the evidence, that you would have to contemplate any lesser included instructions and if you're making a professional judgment that you don't think that that motion is in order for the potential instruction of murder two or manslaughter then I certainly respect that. I just do not want that to be overlooked if that was –

COUNSEL:    No, it wasn't overlooked.

After the court denied the motion on first-degree murder as well as a later motion on second-degree murder, which was made after the initial colloquy above, defense counsel stated, "I am not making a motion on manslaughter."

Because appellant failed to move for a directed verdict on manslaughter, any argument regarding the sufficiency of evidence to sustain the conviction is not preserved. *See Grillot, supra.*

Walton next argues that the evidence is insufficient to sustain the felony conviction for tampering with physical evidence. Arkansas Code Annotated section 5-53-111 provides:

> (a) A person commits the offense of tampering with physical evidence if he or she alters, destroys, suppresses, removes, or conceals any record, document, or thing with the purpose of impairing its verity, legibility, or availability in any official proceeding or investigation.

> (b)(1) Tampering with physical evidence is a Class D felony if the person impairs or obstructs the prosecution or defense of a felony.

> (2) Otherwise, tampering with physical evidence is a Class B misdemeanor.

Ark. Code Ann. § 5-53-111 (Repl. 2016).

In his directed-verdict motion, Walton argued that the State had not "proved or provided a list of evidence they feel was tampered with in this action and there should be a directed verdict on that." The State responded that it provided all the evidence it believed Walton tampered with and noted the specifics. The court denied the motion.

Walton argues on appeal, however, that the State failed to prove that appellant "impaired or obstructed the prosecution or defense of a *felony*." (Emphasis added.) As a

result, he contends that the State established only a *misdemeanor* offense. It is well-settled that parties cannot change the grounds for an objection on appeal but are bound by the scope and nature of the objections and arguments presented at trial. *Tester v. State*, 342 Ark. 549, 553, 30 S.W.3d 99, 102 (2000). Because appellant failed to make this argument below, we cannot consider it on appeal.

For his final argument, appellant contends that the circuit court erred in excluding the toxicology report of the victim. On May 13, 2022, the State filed a motion in limine seeking to exclude a toxicology report performed on Voyles's body, which indicated that Voyles's blood tested positive for cocaine at "29 ng/ml." At the pretrial hearing, the State argued that the report was inadmissible because it did not quantify Voyles's drug use, establish a nexus between Voyles's drug use and the murder, indicate a time frame of when the cocaine was ingested, or show that Voyles was intoxicated at the time he was murdered. Walton argued that the evidence was relevant to his defense of justification portraying Voyles as a bisexual man who "had a history of doing drugs and engaging in sexual activities with young, black men" and that it corroborated Walton's version of events leading up Voyle's death. Walton's defense was that "Mr. Voyles lured Mr. Walton to his house and he was killed in a sexual assault on Mr. Walton[.]"

The circuit court excluded the report. Relying on caselaw, the circuit court ruled that the lack of quantification of cocaine or any indication of when it was ingested created the potential for juror confusion. The court added that evidence of a victim's intoxication is generally irrelevant to the defendant's claim of justification, noting that it may be relevant

if the defendant knew the victim was using drugs or alcohol or if the victim's behavior was such that a defendant could reasonably infer that the victim was under the influence. Based on the information before the court at the hearing, the court granted the State's motion, providing that "[i]f something changes as evidence develops, you can certainly revisit the issue[.]" Walton did not raise the issue again at trial.

On appeal, Walton argues that the circuit court improperly excluded the toxicology report. Specifically, he contends that the report, which showed that Voyles tested positive for cocaine, corroborates his statement to police that the victim smoked marijuana and drugs from a soda can before trying to sexually assault him and supports his justification defense.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401 (2022). Though all relevant evidence is admissible, even relevant evidence can be excluded if its probative value is outweighed by the danger of unfair prejudice or confusion of the issues. *See* Ark. R. Evid. 402, 403. The circuit court's evidentiary rulings will not be reversed absent an abuse of discretion and a showing of prejudice. *See Stanton v. State*, 2020 Ark. 418, at 12, 613 S.W.3d 368, 375.

Evidence of a victim's intoxication or drug use at the time of death is generally irrelevant to the defendant's claim of justification. *Id.* The evidence may only be relevant if the defendant knew the victim was using drugs or alcohol or if the victim's behavior was such that the defendant could have reasonably inferred that the victim was under the influence.

7

*Id.* In *Stanton*, the supreme court stated that it had previously upheld the exclusion of an autopsy report showing a victim's cocaine use because there was no evidence showing that cocaine was linked to the murder. *Id.* (citing *Jones v. State*, 340 Ark. 390, 396–97, 10 S.W.3d 449, 453 (2000) ("Because the defense was unable to show that the cocaine use prompted the killing, the trial court did not err in ruling that the probative value of the evidence was far outweighed by its prejudicial nature.")).

In *Drennan v. State*, 2018 Ark. 328, 559 S.W.3d 262, the supreme court upheld the circuit court's exclusion of a toxicology report showing controlled substances in the victim's body. Drennan argued that there was proof the victim was acting erratically and flailing her arms, and her use of methamphetamine could be tied to her erratic behavior, which could lead to the plausible argument that the discharge from the firearm was an accident. *Id.* at 12, 559 S.W.3d at 268. The State argued *Jones*, *supra*, in response. The supreme court stated that, as in *Jones*, Drennan failed to demonstrate that the victim's drug use was linked to her murder. *Id.* at 13, 559 S.W.3d at 269. The supreme court elaborated that, as noted by the circuit court, there was no "quantification" of the drugs in the victim's system and that Drennan failed to establish that the victim was under the influence at the time of the shooting. *Id.* It concluded that without more, the "mere presence" of methamphetamine on the victim's person and metabolites in the victim's urine failed to demonstrate that her drug use was linked to her murder. *Id.* Considering the circuit court's broad discretion in admitting evidence, the supreme court held that the circuit court did not abuse its discretion

when it concluded that the probative value of the toxicology report would be substantially outweighed by the danger of unfair prejudice. *Id.*

Similarly, this court has upheld the circuit court's exclusion of a witness's testimony from the medical record in regard to the blood-alcohol content of the victim on the basis that the test results without explanation as to the specifics of the results could result in potential jury confusion. *Wright v. State*, 2019 Ark. App. 364, at 7, 584 S.W.3d 711, 715. We noted that if the appellant's attorney wanted to present testimony about the meaning of the blood-test results, an expert should have been called to testify. *Id.*

At the pretrial hearing, the toxicology report was the only evidence before the circuit court. The report shows that the toxicology screen showed "positive" for cocaine and indicated "29 ng/ml." The circuit court ruled that the report was inadmissible absent other evidence that demonstrates the victim was under the influence of a controlled substance and that his drug use was linked to the murder. The circuit court noted that there was no indication of when cocaine was used, which made the probative value of the report low, and stated that the danger of unfair prejudice was significant because it has the effect of changing the focus of the case to the science behind the test, the effects of cocaine use on this particular victim, and how cocaine use affects people in different ways.

Although the report identified the presence of cocaine with an amount listed as "29 ng/ml," there is no explanation of what this meant. As in *Wright*, Walton could have called an expert to explain what the concentration meant but did not do so. Without citation to authority, he now claims that he was restricted to the use of the report provided to him by

the state crime lab. Likewise, there is nothing to connect the presence of the drugs in Voyles's system to the murder. Given the broad discretion afforded to the circuit court in deciding evidentiary matters, we cannot say that the circuit court abused its discretion in concluding that the probative value of the toxicology report would be substantially outweighed by the danger of unfair prejudice.

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*Jones Law Firm*, by: *F. Parker Jones III*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.