Cite as 2026 Ark. 102

# SUPREME COURT OF ARKANSAS
**No.** CR–25–534

| | |
|---|---|
| ISRAEL ESTRADA CANNALTE<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** May 28, 2026<br><br>APPEAL FROM THE INDEPENDENCE COUNTY CIRCUIT COURT<br>[NO. 32CR-24-3]<br><br>HONORABLE TIM WEAVER, JUDGE<br><br><u>AFFIRMED</u>. |

**SHAWN A. WOMACK, Associate Justice**

Israel Cannalte was convicted of first-degree murder and sentenced to life imprisonment. For reversal, Cannalte raises a single point on appeal challenging the sufficiency of the evidence supporting his murder conviction. Specifically, he argues that the State failed to prove he purposely caused the death of Maximo Hernandez. We affirm.

I. *Facts and Procedural Background*

On December 25, 2023, Maximo Hernandez was stabbed to death with a knife and a Phillips-head screwdriver. Cannalte and Hernandez were former roommates at a home Hernandez rented in Batesville. Around lunchtime, Hernandez's son and his son's adopted mother visited him for a couple of hours. Another former roommate of Hernandez, Saundra Johnson, also planned on visiting him on Christmas, but he would not answer her phone calls. Eventually, Johnson went to Hernandez's around 9:00 or 9:30 p.m. Christmas night. She knocked on the door. No one answered, so she left. She continued to call Hernandez, but he never answered. The next morning, Johnson and a friend went to check on

Hernandez. She again knocked on the door with no answer. She even checked with a neighbor and asked whether the neighbor had seen Hernandez. Closer to noon, she went back to check again. This time, she pushed the front door open. She saw Hernandez on the floor. Because she could see blood on the floor, she did not enter and immediately called 911.

The police arrived and found Hernandez in the living room face down in a pool of blood with his feet partially propped up on the couch. A responding officer said the room was in disarray. Furniture was turned over, and items were strewn on the floor. In addition, there was blood throughout the home, including in the living room, kitchen, kitchen sink, bathroom, and on a door in the kitchen that led outside. The blood in the bathroom was diluted with water as if someone had washed blood off of their hands into the sink that then dripped on the floor and the toilet. A half-folded knife that would no longer open or close was found on the floor of the kitchen. A Phillips-head screwdriver was in the kitchen sink, submerged in water. Given this, police asked local hospitals to be on the lookout for a person with injuries consistent with involvement in a stabbing.

Unity Health in Newport then reported that a Hispanic male was in the emergency room with cuts and injuries to his hand that he could not explain. An investigator arrived at the hospital and told Cannalte, "[W]e need to chit chat, don't we." Cannalte responded by hanging his head and then nodding yes. He had a deep cut to his right pinky and a large cut to his index finger. Both appeared to be injured by a sharp object. Cannalte also grimaced when removing his sweater as if his arm or shoulder was injured.

Investigators used data from cellphone towers to determine Cannalte's location on the day of the murder. The data showed that Cannalte was at the victim's residence from 3:00 p.m. until 4:12 p.m. At 3:49 p.m., one of Cannalte's children sent him a text message asking if he was still in Batesville. Cannalte responded no almost immediately. This was contradicted by the cellphone tower data. Around 5:00 p.m., Cannalte's phone was no longer signaling, indicating that it had likely been turned off or placed in airplane mode. At 5:38 p.m., the phone was back on and located in Newport. It was last used at 3:21 p.m. to make a call.

The Arkansas State Crime Laboratory found DNA matches to Cannalte in the victim's home. Specifically, his blood was found on the inside and outside doorknob to a kitchen door that led outside and on the knife located at the scene. Blood was also found inside his truck. The probabilities that the DNA on these items could have matched a person other than Cannalte were astronomically small, ranging from 1 in 98.1 quintillion to 1 in 11.9 decillion.

Dr. Steven Erickson of the Arkansas State Crime Laboratory conducted Hernandez's autopsy, determining that he died of over twenty-five stab wounds inflicted with a knife and a Phillips-head screwdriver. He found that the cuts, scratches, abrasions, blunt injuries, defensive wounds, and sheer number of stab wounds were consistent with a prolonged fight in close combat. Of the stab wounds, two were determined to be fatal. One pierced Hernandez's heart and another severed an artery in his arm.

At trial, after the State rested, Cannalte moved for a directed verdict, arguing that the State failed to prove that Cannalte purposely caused Hernandez's death. Cannalte

claimed that, at most, the State proved he was present in the home.  The circuit court denied the motion, and the jury convicted Cannalte of first-degree murder and sentenced him to life imprisonment.  This appeal followed.

## II.  *Standard of Review*

A motion for directed verdict is a challenge to the sufficiency of the evidence.[1]  This court will affirm if substantial evidence supports the conviction.[2]  Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture.[3]  On appeal, the evidence is viewed in the light most favorable to the State, and issues of witness credibility and conflicting proof are left to the jury.[4]

The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence.[5]  Further, circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion.[6]  Whether the evidence excludes every other reasonable hypothesis is for the jury to decide.[7]

---

[1] *Tait v. State*, 2026 Ark. 28, at 7–8 (citing *Price v. State*, 2019 Ark. 323, at 4, 588 S.W.3d 1, 4).

[2] *Id.* (citing *Edmond v. State*, 351 Ark. 495, 95 S.W.3d 789 (2003)).

[3] *Id.* (citing *Dortch v. State*, 2018 Ark. 135, at 5, 544 S.W.3d 518, 522).

[4] *Id.* (citing *Drennan v. State*, 2018 Ark. 328, at 6, 559 S.W.3d 262, 266).

[5] *Id.*

[6] *Id.* (citing *Howard v. State*, 2016 Ark. 434, at 12, 506 S.W.3d 843, 850).

### III.    *Discussion*

### A.    Cannalte's Sufficiency Challenge Fails

Cannalte was convicted of first-degree murder. The State presented substantial evidence to support this conviction.

As charged in this case, "[a] person commits murder in the first degree if . . . [w]ith the purpose of causing the death of another person, the person causes the death of another person."[8] A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result.[9] Because of the difficulty in ascertaining intent, it is presumed that persons intend the natural and probable consequences of their actions, and the fact-finder may draw upon common knowledge and experience to infer intent from the circumstances.[10] The intent necessary for first-degree murder may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds.[11]

Here, the State presented substantial evidence from which the jury could conclude that Cannalte purposely caused Hernandez's death. Dr. Erickson testified that Hernandez sustained more than twenty-five stab wounds inflicted with both a knife and a Phillips-head screwdriver. The injuries included defensive wounds, blunt-force injuries, cuts, scratches,

---

[7]*Id.*

[8]Ark. Code Ann. § 5-10-102(a)(2) (Supp. 2023).

[9]*Smith v. State*, 2024 Ark. 1, at 6, 680 S.W.3d 711, 716.

[10]*Harmon v. State*, 340 Ark. 18, 27, 8 S.W.3d 472, 477 (2000).

[11]*See supra*, note 10.

and abrasions consistent with a prolonged close-quarters fight. The sheer number of wounds, the use of multiple weapons, and the location and severity of the injuries permitted the jury to infer purposeful intent to kill.[12]

The State also presented substantial evidence identifying Cannalte as the attacker. Cell tower data placed him at Hernandez's residence during the relevant time period, and he falsely told his child by text message that he was no longer in Batesville despite data showing he remained at the residence. The jury was free to consider this false statement as evidence of consciousness of guilt.[13] Moreover, Cannalte's blood was found throughout the residence, including on the inside and outside doorknobs leading from the kitchen to the exterior of the home and on the broken knife recovered from the scene. His blood was also found inside his truck.

Additionally, when investigators located Cannalte at a hospital shortly after the killing, he had deep cuts on his fingers consistent with injuries sustained during a stabbing, and he appeared to have additional injuries to his arm or shoulder. A jury could reasonably conclude that Cannalte sustained those injuries during the violent struggle that resulted in Hernandez's death.

---

[12]*See Mulkey v. State*, 330 Ark. 113, 117, 952 S.W.2d 149, 151 (1997*)* (holding that the jury could infer purposeful intent from the nature and extent of the victim's injuries and the circumstances of the attack); *see also Weatherford v. State*, 2025 Ark. 150, at 8, 720 S.W.3d 843, 850.

[13]*See Robinson v. State*, 353 Ark. 372, 381, 108 S.W.3d 622, 627 (2003) (holding that "the jury was free to consider Robinson's repeated lies to authorities and his changing stories about his knowledge of [the victim's] whereabouts" as evidence of guilt).

Cannalte's arguments on appeal largely ask this court to reweigh the evidence and speculate about alternative possibilities. He contends that his presence at the residence and the existence of his DNA in the home were unsurprising because he previously lived there. But the jury was not required to accept that explanation, particularly given the evidence that his blood was found on the murder weapon and throughout the home after a violent struggle. Likewise, the fact that another unidentified DNA profile may have been present on the knife or that no usable DNA profile was obtained from the screwdriver does not render the evidence insufficient. Circumstantial evidence need not eliminate every conceivable hypothesis consistent with innocence; it need only exclude every other reasonable hypothesis, and whether it does so is a question for the jury. Here, the jury reasonably rejected Cannalte's explanations of innocence and concluded that the evidence established his guilt.

Furthermore, this case is not comparable to *Green v. State*, 265 Ark. 179, 577 S.W.2d 586 (1979), as Cannalte claims. Unlike the defendant in *Green*, Cannalte was not merely present near the scene of a crime committed by others. The State presented evidence placing him inside the residence during the relevant timeframe, linking his blood directly to the murder weapon and multiple areas throughout the crime scene, showing injuries consistent with participation in the stabbing, and demonstrating that he lied about his whereabouts shortly after the murder. Viewed in the light most favorable to the State, this evidence was more than sufficient to permit the jury to conclude, without resorting to speculation or conjecture, that Cannalte purposely caused Hernandez's death. Accordingly, the circuit court properly denied Cannalte's directed-verdict motion.

## IV.    *Conclusion*

Cannalte's sufficiency challenge does not warrant reversal.  Viewed in the light most favorable to the State, the evidence supported both that Cannalte killed Hernandez and that he did so purposely.

Affirmed.

Special Justice CODY KEES joins.

WEBB, J., not participating.

*The Law Offices of J. Paul Coleman*, by: *Jay Paul Coleman*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.